Pedro SANCHEZ, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0304–CR–362.

Court of Appeals of Indiana.

Feb. 6, 2004.

Transfer Denied May 7, 2004.

Michael C. Borschel, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### *STATEMENT OF THE CASE*

Appellant–Defendant, Pedro Sanchez (Sanchez), appeals his conviction for possession of marijuana or hash, a Class D felony, Ind.Code § 35–48–4–11.

We reverse and remand.

### *ISSUES*

Sanchez raises one issue on appeal, which we restate as follows: whether the trial court abused its discretion and committed reversible error by denying Sanchez' Motion to Suppress evidence seized incident to arrest after an illegal detention.

### *FACTS AND PROCEDURAL HISTORY*

At approximately 6:30 p.m. on December 9, 2002, uniformed Indianapolis Police Department (IPD) Officers Todd Wellman (Officer Wellman) and Angela Poe (Officer Poe) (collectively "the Officers") attempted to serve a warrant on Antwan Luckett

(Luckett) at his apartment located at 4600 Georgetown Court, Indianapolis, Indiana. Luckett was described as an African–American male, about 5′11″ tall, and weighing 250 pounds. Failing to find Luckett at home, the Officers canvassed the area surrounding the apartment complex. While walking away from Luckett's apartment, Officer Wellman noticed an individual, about 40 to 50 feet away, who he thought fit Luckett's description, leaning in the passenger window of a car. However, as the Officers approached this individual within 10 feet, they realized he was Hispanic, not African American.

Officer Wellman requested permission to speak to this individual, later identified as Sanchez, and asked him if he lived in the area and knew Luckett. The Officers subsequently required Sanchez to remove his hands from his pockets and to provide identification. Sanchez told the Officers that although he did not have state identification with him, his name was "Carlos Hernandez," with a date of birth October 31, 1981. He further added that he could not remember his social security number. While Officer Wellman investigated the information for open warrants, Officer Poe continued questioning Sanchez. When the Officers were unable to confirm Sanchez' identity, Sanchez clarified that his identification card might be just a "school I.D." (Transcript p. 36). Sanchez stated next that he did not have one fixed address, but received mail at 3110 Medford Avenue. He was unable to identify the owner of this residence or its telephone number. When the Officers questioned Sanchez why he was at the apartment complex, he told the Officers that he was visiting his uncle in apartment C. However, the Officers knew from prior experience that the apartments were numbered, not lettered.

After failing to find Sanchez' identification as Carlos Hernandez on file, the Offi-cers took him to his uncle's apartment, about forty feet away. At the apartment, an Hispanic male opened the door and claimed not to recognize Sanchez. At that moment, Sanchez whispered something in Spanish and the occupant replied that he was indeed Sanchez' uncle, but when asked, did not know Sanchez' name. Thereafter, Sanchez was handcuffed and transported to the IPD Identification Unit located in the City–County Building where he was fingerprinted and identified as Sanchez. He was arrested for an open State of Illinois warrant and searched incident to the arrest. During this search, a small quantity of marijuana was recovered.

On December 10, 2002, the State filed its information charging Sanchez with Count I, Part I, possession of marijuana, a Class A misdemeanor, I.C. § 35–48–4–11, and Count I, Part II, possession of marijuana, a Class D felony, I.C. § 35–48–4–11. On January 22, 2003, Sanchez filed a Motion to Suppress Evidence, which was denied by the trial court on February 10, 2003. On February 19, 2003, a jury trial was held. Before evidence was heard by the jury, the trial court conducted a hearing on Sanchez' Motion in Limine and revisited the Motion to Suppress. After review, the trial court again denied Sanchez' Motion to Suppress. The trial court held that, although the initial stop was illegal, the evidence was obtained incident to his arrest on an open Illinois warrant. At the conclusion of the jury trial, the jury found Sanchez guilty of Count I. On March 17, 2003, the trial court conducted a sentencing hearing. At the sentencing hearing, the trial court sentenced Sanchez to a term of imprisonment for one year, with 198 days executed and 167 days suspended.

Sanchez now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Sanchez argues that the Officers violated his Fourth Amendment right to be secure against unreasonable searches and seizures, and the corresponding provision under the Indiana Constitution, when they stopped him on December 9, 2002. For this reason, Sanchez maintains that the trial court erred by denying his Motion to Suppress. The State counters that the stop was legal as Sanchez consented to the questioning. Furthermore, the State contends, that even if Sanchez' consent was not valid, his arrest at the police station pursuant to an outstanding warrant dissipated any taint of the illegal stop and made the search incident to that valid arrest proper.

### I. Standard of Review

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *See Crabtree v. State,* 762 N.E.2d 241, 244 (Ind.Ct.App.2002). Generally, no abuse of discretion occurs where there exists sufficient evidence justifying the initial seizure. *Id.* As with other sufficiency determinations, we do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id.* Unlike other sufficiency determinations, however, we must also consider the uncontested evidence most favorable to the defendant, in order to effectuate the broad protection afforded by the Fourth Amendment. *Brown v. State,* 653 N.E.2d 77, 79 (Ind.1995). "The provision must receive a liberal construction in its application to guarantee the people against unreasonable search and seizure." *Id.*

### II. Fourth Amendment

Sanchez first contends that the trial court abused its discretion and committed reversible error by denying his Motion to Suppress. Specifically, Sanchez argues that the marijuana evidence resulted from an illegal detention and should have been excluded from trial under the fruit of the poisonous tree doctrine. Conversely, the State maintains that Sanchez' valid arrest pursuant to an outstanding warrant dissipated any taint of the stop and made the search incident to that valid arrest proper.

The Fourth Amendment to the United States Constitution provides, in pertinent part: "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ..." U.S. CONST. Amend. IV. The Fourth Amendment's protection against unreasonable searches and seizures has been extended to the States through the Fourteenth Amendment. *See Berry v. State,* 704 N.E.2d 462, 464–65 (Ind.1998). As a general rule, the Fourth Amendment prohibits a warrantless search. *Id.* Consequently, when a search is conducted without a warrant, the State has the burden of proving that the search falls into one of the exceptions to the warrant requirement. *Id.* at 465.

One exception to the warrant requirement was recognized by the United States Supreme Court in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Terry,* the Supreme Court established the rule that a police officer may, without a warrant or probable cause, briefly detain a person for investigatory purposes, if, based on specific and articulable facts together with rational inferences from those facts, the officer has a reasonable suspicion that criminal activity "may be afoot." *Id.* at 21–22, 88 S.Ct. 1868.

Nevertheless, this concept of reasonable suspicion is not readily reduced to a neat set of legal rules. Rather, in evaluating the legality of an investigatory stop, we must consider the totality of the

circumstances. *See United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). The requirement is then satisfied when the facts known to the officer *at the moment of the stop*, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. *Lyons v. State*, 735 N.E.2d 1179, 1183–84 (Ind.Ct.App.2000), *trans. denied* (emphasis added).

■ However, our Supreme Court has previously held that a consensual encounter does not implicate the protection of the Fourth Amendment. *See Finger v. State*, 799 N.E.2d 528, 532 (Ind.2003). As long as an individual engaged by the police remains free to leave, the encounter is consensual. *See Florida v. Bostick*, 501 U.S. 429, 439, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). The determination whether a citizen is free to walk away from contact with police is "whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Id.*

In the instant case, our review of the record reveals that when the Officers were about ten feet away, they realized that Sanchez did not fit Luckett's description. Officer Wellman testified that he requested Sanchez' permission to talk to him for a minute. After this permission was freely granted, the Officers asked Sanchez whether he knew Luckett and whether he himself lived in the area. The record further reflects that following Sanchez' response that he didn't live anywhere close, the Officers told Sanchez to take his hands out of his pockets and to show his identification. When Sanchez failed to produce an identity card, Officer Wellman asked for his name, which Sanchez verbally gave as "Carlos Hernandez." The record shows

that while Officer Wellman returned to his car and investigated the information for open warrants, Officer Poe remained with Sanchez. Sanchez stated that while Officer Poe continued questioning him, she was toying with her gun belt.

Here, we find that, although Sanchez' initial encounter with the Officers was consensual, his encounter evolved into an investigatory stop as soon as Sanchez remained detained after Officer Wellman was advised that the name Sanchez had provided was "not on file." (Tr. p. 51) After the investigation produced a negative result, Sanchez was further questioned about his identity and address. Eventually, the Officers accompanied him to his uncle's apartment to personally verify his name. The Officers' conduct here communicated to a reasonable person that Sanchez was no longer free to terminate the encounter. *See Bostick*, 501 U.S. at 439, 111 S.Ct. 2382 (1991). Consequently, the encounter became an investigatory stop, subject to the protection of the Fourth Amendment. *See Terry*, 392 U.S. at 21–22, 88 S.Ct. 1868; *Florida v. Royer*, 460 U.S. 491, 501, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983) (plurality opinion) (where the United States Supreme Court concluded that police officers can ask for and examine an airline ticket and driver's license. However, when the officers asked Royer to accompany them to the police room, while retaining his ticket and driver's license and without indicating in any way that he was free to depart, the Supreme Court held that Royer was effectively seized for the purposes of the Fourth Amendment).

■ Accordingly, as we have mentioned above, to withstand constitutional scrutiny, an investigatory stop requires the presence of a reasonable suspicion based on articulable facts which, together with the reasonable inferences arising there-

from, would permit an ordinary prudent person to believe that criminal activity has or was about to occur. *See Terry,* 392 U.S. at 21–22, 88 S.Ct. 1868. "Such reasonable suspicion must be comprised of more than an officer's general hunches or unparticularized suspicions." *Jefferson v. State,* 780 N.E.2d 398, 404 (Ind.Ct.App. 2002) (quoting *Webb v. State,* 714 N.E.2d 787, 788 (Ind.Ct.App.1999)). At the moment of the stop, no articulable facts existed that would cause the Officers to believe that criminal activity was about to occur. *See Lyons,* 735 N.E.2d at 1183–84. The only evidence available to the Officers indicated that Sanchez did not fit Luckett's description as provided to them. Further, once Officer Wellman established that the name given to him by Sanchez was "not on file," Sanchez should have been free to go. (Tr. p. 51). The record is silent as to any facts amounting to a reasonable belief that criminal activity is about to occur.

Although we do not minimize the fact that Officer Wellman testified that Sanchez's behavior of leaning in a passenger window of a car can be consistent with possible narcotics behavior, the Officers did not observe any sort of transaction or interaction between Sanchez and the individual in the car. The mere fact that he was leaning in a car window is simply not enough to meet the State's burden in this case. Therefore, we find that, despite the State's contention that the Officers' encounter with Sanchez was consensual, the situation evolved into an investigatory stop which was not supported by reasonable suspicion. *See Terry,* 392 U.S. at 21–22, 88 S.Ct. 1868. Consequently, we conclude that Sanchez' seizure was illegal.

■ Furthermore, evidence obtained pursuant to an unlawful search or seizure has to be excluded under the fruit of the poisonous tree doctrine. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct.

407, 9 L.Ed.2d 441 (1963). "When applied, the 'fruit of the poisonous tree' doctrine operates to bar not only evidence directly obtained, but also evidence derivatively gained as a result of information learned or leads obtained during an unlawful search of seizure." *Id.* Nonetheless, the United States Supreme Court has refused to adopt a "but for" rule, making inadmissible any and all evidence which comes to light through a chain of events beginning with an illegal stop or arrest. *See United States v. Green,* 111 F.3d 515, 520 (7th Cir.1997) (citing *Wong Sun,* 371 U.S. at 487–88, 83 S.Ct. 407 (1963)), *cert. denied.* Rather, the Court stated, "the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* Evidence may be purged of the primary taint if the causal connection between the illegal police conduct and the procurement of the evidence is "so attenuated as to dissipate the taint of the illegal action." *Id.* at 521.

■ The three factors for consideration in determining whether the causal chain is sufficiently attenuated are: "(1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct." *Id.* (citing *Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975)). The important consideration in the third factor is whether the evidence came from "the exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* (quoting *Wong Sun,* 371 U.S. at 488, 83 S.Ct. 407).

We recognize that the instant case is factually similar to two cases coming out of this court, which reached opposite conclusions. In *Jefferson v. State*, 780 N.E.2d 398 (Ind.Ct.App.2002), we held that the temporary detention of Jefferson was an unconstitutional seizure, requiring the suppression of the evidence seized during the subsequent warrantless search of her car. *Id.* at 405. In that case, a police officer noticed Jefferson sitting behind the wheel of her illegally parked vehicle and requested her to move. *Id.* at 400. Approximately fifteen minutes later, the officer noticed Jefferson again, legally parked, surrounded by a group of men, with one gentleman leaning in through the front passenger window. *Id.* The officer pulled his police car alongside Jefferson's car, while two other officers in separate cars joined them. *Id.* All three officers approached Jefferson's car and she was directed to get out of her car and to stand behind it. *Id.* An officer received Jefferson's name and radioed it to his dispatcher to check for outstanding warrants. *Id.* After being advised that there was an outstanding warrant on Jefferson, she was placed under arrest. *Id.* We reasoned that, based on these facts, Jefferson was no longer free to leave the scene and consequently was temporarily detained prior to the discovery of the open arrest warrant. *Id.* at 404. Since this detention was not supported by any reasonable suspicion, as required under the Fourth Amendment, we found that her seizure was illegal. *Id.* at 405.

On the other hand, contending that the causal chain is sufficiently attenuated in this case, the State applies *Quinn v. State*, 792 N.E.2d 597 (Ind.Ct.App.2003). In *Quinn*, we held that the trial court did not err by refusing to suppress evidence found during a search incident to arrest where the initial stop may not have been legal. *Id.* at 602. There, the police was informed that Quinn, wanted on an outstanding arrest warrant, was standing outside a grocery store. *Id.* at 598. By the time the police arrived, Quinn had left in a small car accompanying a truck, pulling a boat. *Id.* About twenty minutes after the initial contact, an officer observed a woman leave a gas station and enter a small car which appeared to be traveling with a truck pulling a boat. *Id.* The officer stopped the car before it committed any traffic violations. *Id.* at 599. Although the driver provided a different name, the officer found the driver fit Quinn's general description. *Id.* An officer who knew Quinn personally came to the scene and conclusively confirmed the driver to be Quinn. *Id.* Quinn was subsequently arrested on an open warrant. *Id.* We concluded that regardless of whether the stop was illegal, "the intervening lawful arrest was sufficient to remove the taint of any police illegality." *Id.* at 603. The concurring opinion in *Quinn* clarifies that *Quinn* was distinguished from *Jefferson* on the basis of the officers' knowledge of the outstanding warrant *prior to* the stop of the vehicle. *Id.* (emphasis added).

After a thorough examination of both cases, we elect to follow *Jefferson*. As in *Jefferson*, the Officers had no knowledge of the outstanding Illinois warrant prior to seizing Sanchez. Only after Sanchez was detained and subsequently fingerprinted, did the Officers discover the warrant. And even though Sanchez had committed no violations that would justify the initial detention, a display of physical intimidation by the Officers, as was the case in *Jefferson*, indicated that Sanchez was no longer free to leave the scene. Unlike *Quinn*, Sanchez did not fit the description of the individual to whom the Officers attempted to serve the warrant. Furthermore, unlike here, the only purpose of Quinn's stop was to arrest him pursuant to an open warrant.

Moreover, based on the three requirements identified for the application of the attenuation doctrine, we cannot conclude that the causal chain is sufficiently attenuated to dissipate any taint of the illegal stop. *See Wong Sun,* 371 U.S. at 487–88, 83 S.Ct. 407. Specifically, in analyzing the first factor, we acknowledge that the time elapsed between the illegality and the acquisition of the evidence was not significant. *See Green,* 111 F.3d at 520 (citing *Brown,* 422 U.S. at 603–04, 95 S.Ct. 2254). Officer Wellman testified that Sanchez was stopped for about fifteen to twenty minutes before he was handcuffed and transported to the police station. The second factor, the presence of intervening circumstances was equally not satisfied here. *See id.* During the entire period of the illegal seizure, the Officers attempted to personally verify Sanchez' identity. Only after his fingerprints conclusively proved him to be Sanchez, the outstanding warrant was discovered and the marijuana found. Thus, the record is silent as to any intervening circumstance.

The third factor, the purpose and flagrancy of the official misconduct, is also an important consideration here. *See id.* The purpose of Sanchez' stop was clearly to elicit information about Luckett's whereabouts. Even though the United States Supreme Court has recognized that an interrogation relating to one's identity or a request for identification by the police does not, by itself constitute a Fourth Amendment seizure, the Officers here clearly went too far. *See Royer,* 460 U.S. at 501, 103 S.Ct. 1319. Absent any reasonable suspicion, Sanchez should have been free to leave as soon as Officer Wellman was advised that the name Sanchez provided was "not on file." (Tr. p. 51) Yet, the Officers continued to interrogate Sanchez, and eventually transported him to the police department for fingerprinting. Therefore, we conclude that the Officers' actions were flagrant and intended to exploit an illegal arrest. Consequently, we determine that the causal chain between the commencement of the illegality and the seizure of the evidence is not sufficiently attenuated to purge the primary taint. *See Green,* 111 F.3d at 520 (7th Cir.1997) (citing *Wong Sun,* 371 U.S. at 487–88, 83 S.Ct. 407 (1963)).

Based on the analysis above, we find that despite Sanchez' initial consent, the encounter evolved into an investigatory stop, unsupported by any reasonable suspicion. *See Terry,* 392 U.S. at 37, 88 S.Ct. 1868. Accordingly, the evidence collected was the result of an illegal seizure which implicated Sanchez' Fourth Amendment rights and which should have been excluded from trial pursuant to the fruit of the poisonous tree doctrine. *See Wong Sun,* 371 U.S. at 487–88, 83 S.Ct. 407. Consequently, we hold that the trial court abused its discretion by refusing to grant Sanchez' Motion to Suppress the evidence. *See Crabtree,* 762 N.E.2d at 244.

## CONCLUSION [1]

Based on the foregoing, we find that the trial court abused its discretion and committed reversible error by denying Sanchez' Motion for Suppression of evidence seized incident to arrest after an illegal detention.

Reversed and remanded.

DARDEN, J., and BAILEY, J., concur.

---

1. We do not reach Sanchez' alleged violation of Art. I, § 11 Indiana Constitution as we find the Fourth Amendment issue dispositive in this case.