IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

JARMEN SHONTANE
MCCRAY,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

Appellant,

v.                                          CASE NO. 1D14-0024

STATE OF FLORIDA,

Appellee.

_____/

Opinion filed October 20, 2015.

An appeal from the Circuit Court for Okaloosa County.
John T. Brown, Judge.

Nancy A. Daniels, Public Defender, and Archie F. Gardner, Jr., Assistant Public
Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Angela R. Hensel, Assistant Attorney
General, Tallahassee, for Appellee.

MARSTILLER, J.

    Jarmen Shontane McCray appeals his conviction for unlawful possession of

oxycodone asserting that the trial court erred in denying his dispositive motion to

suppress evidence found during a search of his vehicle. Concluding that the search was lawful, we affirm.

On February 5, 2013, between 6:00 a.m. and 7:00 a.m., officers with the Okaloosa County Sheriff's Office served and executed a narcotics search warrant at the residence of John and Megan King. The probable cause affidavit alleged the Kings were distributing "large quantities of marijuana." Sgt. David Allen was a member of the drug task force executing the warrant. While the search was occurring, McCray, who did not live at the residence, pulled into the driveway. Sgt. Allen made contact, and McCray said he was there to visit John King. Sgt. Allen noticed McCray "seemed very nervous and he had his hand in between the driver's seat and the center console." Seeing this, the sergeant asked McCray if he had a firearm[1] or anything in the car that would get him into trouble. When McCray did not respond, the sergeant asked him to step out of the vehicle, which he did. A second officer, Investigator Rodney Owens, attended the encounter.

With McCray outside the vehicle, Sgt. Allen asked if he had any marijuana; McCray said no. Sgt. Allen then asked to search the vehicle, and McCray, in turn, asked if he had to allow the search. Sgt. Allen said no, and inquired again if there

---

[1] At the suppression hearing, Sgt. Allen could not recall specifically asking about a firearm. However, reading from a transcript of his own prior deposition testimony, Sgt. Allen said he asked McCray, "You're acting real nervous, man. I mean, is there a gun in the car or marijuana in the car?"

2

was anything in the vehicle that would get McCray in trouble.  At this, McCray "took a deep sigh," "said he had some roxy's[2] [sic] in the vehicle," and allowed Investigator Owens to search it.  The search yielded a napkin, found between the driver's seat and the center console area, containing oxycodone pills.

In its order denying McCray's motion, the trial court determined that Sgt. Allen's request of McCray to exit the vehicle transformed the casual citizen encounter into an investigative stop; that McCray's nervousness and hidden hand provided lawful grounds—concern for officer safety—for the detention; and that McCray's consent to search the vehicle was voluntary.  The court also concluded the search was valid pursuant to the search warrant which specifically authorized officers to search vehicles located on the curtilage of the residence.  His dispositive motion to suppress denied, McCray pled nolo contendere to unlawful possession of oxycodone.

On appeal, McCray contends there was no valid concern over officer safety when he arrived at the residence being searched because he did nothing to reasonably raise such concern.  Therefore, his detention was unlawful, and his consent to the vehicle search was not voluntary.  He posits further that a visitor does not, simply

---

[2] Roxicodone, a brand name for oxycodone. *See* U.S. National Library of Medicine, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0011537/?report=details  (last accessed Sept. 30, 2015).

by being present on the premises, relinquish control of his automobile to the person being visited so as to bring it within the ambit of a search warrant for the residence and curtilage.

As the trial court's factual findings are not in dispute, we consider the court's application of those facts to the pertinent law.[3] First, the court correctly determined the interaction between Sgt. Allen and McCray moved from casual citizen encounter to investigatory detention when the officer asked McCray to step out of his vehicle. *See Popple v. State*, 626 So. 2d 185, 188 (Fla. 1993) ("Whether characterized as a request or an order, we conclude that [the officer's] direction for Popple to exit his vehicle constituted a show of authority which restrained Popple's freedom of movement because a reasonable person under the circumstances would believe that he should comply.").

Second, detaining McCray was lawful based on officer safety concerns. Although general concern about safety won't suffice, "[a] temporary detention of an individual may be justified by an officer's specific concern for his own safety."

_____

[3] With regard to a motion to suppress, an appellate court reviews a trial court's factual findings to determine whether they are supported by competent, substantial evidence. *Williams v. State*, 721 So. 2d 1192, 1193 (Fla. 1st DCA 1998). However, review of the trial court's application of the law to the facts is *de novo*. *Id*. Further, the trial court's ruling "comes to the appellate court clothed with a presumption of correctness, and the reviewing court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling." *Pagan v. State*, 830 So. 2d 792, 806 (Fla. 2002).

*Gentles v. State*, 50 So. 3d 1192, 1198 (Fla. 4th DCA 2010) (citing *Terry v. Ohio*, 392 U.S. 1, 30-31 (1968)); *see Popple*, 626 So. 2d at 188 n.1 ("We can envision factual scenarios in which an officer who is put in fear of his or her safety would be justified in ordering a person out of a vehicle even in the absence of reasonable suspicion [of criminal activity]."). "In determining whether an officer acted reasonably under the circumstances, courts must give due weight to the specific reasonable inferences which officers are entitled to draw from the facts in light of their experience[.]" *Id.* "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27.

Here, McCray showed up unexpectedly at the home of known drug dealers—controlled drug buys from one or both residents had been conducted previously—while members of a law enforcement drug task force were searching the home under a warrant. It was between 6:00 and 7:00 in the morning—an odd time for a casual visit. Upon encountering McCray in the driveway of the home being searched, Sgt. Allen observed McCray acting nervous and, notably, hiding his hand between the driver's seat and the center console of the vehicle. When asked whether he had any firearms or marijuana in his possession, McCray did not respond, reasonably raising concern. Considering the totality of circumstances facing Sgt. Allen at that moment,

5

we conclude a prudent, experienced law enforcement officer would be concerned for his safety. As such, the sergeant was justified in asking McCray to step out of the vehicle. *See U.S. v. DeJear*, 552 F.3d 1196, 1201 (10th Cir. 2009) ("Furtive movements, nervousness, and the fact that conduct occurs in an area known for criminal activity are all appropriate factors to consider in determining whether reasonable suspicion exists."); *cf. T.M. v. State*, 37 So. 3d 384, 385-86 (Fla. 4th DCA 2010) (holding weapons pat-down for officer safety not reasonable where youths, *inter alia*, made no threatening, furtive or nervous gestures); *Gentles*, 50 So. 3d at 1198 (finding no grounds for officer safety concern where there was no evidence of furtive movements or nervous reactions by motorist temporarily detained).

Finally, McCray's consent to a search of his vehicle once lawfully detained was valid. "[W]here the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority." *Reynolds v. State*, 592 So. 2d 1082, 1086 (Fla. 1992) (quoting *Florida v. Royer*, 460 U.S. 491, 497 (1983)). The key fact here is that McCray consented to the search even after Sgt. Allen told him he did not have to do so. McCray not only affirmatively agreed to the search, but he also told the officers what they would find in his vehicle.

Finding McCray's temporary detention and the search of his vehicle lawful, we conclude the trial court correctly denied the motion to suppress, and we affirm McCray's conviction.

AFFIRMED.


WOLF and SWANSON, JJ., CONCUR.