IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D16-167

STATE OF FLORIDA,

     Appellant,

v.

DOUGLAS DICKEY,

     Appellee.

_____/

Opinion filed October 13, 2016.

An appeal from the Circuit Court for Leon County.
Terry P. Lewis, Judge.

Pamela Jo Bondi, Attorney General, Matthew Pavese, Assistant Attorney General,
Tallahassee, for Appellant.

Jeffrey E. Lewis, General Counsel, Michael J. Titus, Assistant Regional Conflict
Counsel, Tallahassee, for Appellee.

LEWIS, J.

     The State appeals an order suppressing contraband that was found on

Appellee's person following a search conducted incident to arrest on an outstanding

warrant. The State argues that suppression was not warranted given that the taint from any unlawful conduct engaged in by law enforcement was purged by the discovery of the warrant. For the reasons that follow, we disagree and, therefore, affirm.

The State charged Appellee, Douglas Dickey, with possession of cocaine, giving a false name or identification to an officer, and possession of a controlled substance. Appellee moved to suppress the evidence against him, arguing that he was unlawfully seized when the contraband was discovered. During the suppression hearing, the deputy at issue testified that he observed a stopped vehicle in the middle of a roadway with a male who was later identified as Appellee standing at the driver's side door. The deputy could not tell what Appellee was doing. The vehicle "took off" after the deputy pulled behind it and activated his lights. The deputy did not pursue the vehicle but instead made contact with Appellee, "[j]ust to see what was going on in the road." The deputy asked Appellee his name, to which Appellee stated, "Shawn Williams." The deputy ran the name but found nothing, "[n]o driver's license, no history of any type." Appellee told the deputy that he was not carrying a license or wallet but that his girlfriend who was across the street could identify him. When the deputy began to speak to the female, Appellee "leaned in whispering to her," and the deputy could hear "her say, Shawn." When asked what he did at that point, the deputy replied, "At that point for my safety and the

2

identification of him, I went ahead and secured him in handcuffs." The deputy affirmatively responded when asked if it was a consensual encounter at the time Appellee gave the false name. When asked on cross-examination why he put Appellee in handcuffs, the deputy replied, "Due to the fact that he had leaned in and told the female to say Shawn. At that time, I knew he was lying about his identification." The deputy did a patdown for weapons, finding a knife in Appellee's pocket and "a wallet that he said he did not have in his rear pocket." The deputy ran Appellee's name, "which came back with a felony warrant." The deputy affirmatively responded when asked if he placed Appellee under arrest at that point and searched him incident to the arrest. He discovered what he suspected to be crack cocaine on Appellee's person. He estimated that a "[m]inute, minute-and-a-half" elapsed between putting Appellee in handcuffs and finding the cocaine. The trial court granted Appellee's motion and suppressed the contraband. This appeal followed.

A trial court's ruling on a motion to suppress comes to an appellate court clothed with a presumption of correctness, and the reviewing court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner that is most favorable to sustaining the trial court's ruling. Pagan v. State, 830 So. 2d 792, 806 (Fla. 2002). A trial court is vested with the authority to determine the credibility of the witnesses and the weight of the evidence. Lee v.

3

State, 868 So. 2d 577, 579 (Fla. 4th DCA 2004). "When reviewing a ruling on a motion to suppress, we defer to the trial court's findings of fact which are supported by competent, substantial evidence, and review de novo the application of the law to those facts." State v. Meachum, 196 So. 3d 496, 497-98 (Fla. 1st DCA 2016); see also United States v. Carter, 573 F.3d 418, 422 (7th Cir. 2009) ("We review a district court's order rejecting an attenuation theory de novo."); State v. Mazuca, 375 S.W.3d 294, 310 (Tex. Ct. App. 2012) (applying the de novo standard of review in determining whether the taint of unlawful police conduct was purged).

There are three levels of police-citizen encounters: (1) a consensual encounter during which a citizen may voluntarily comply with an officer's request or choose to ignore him or her; (2) an investigatory stop during which an officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that the person has committed, is committing, or is about to commit a crime; and (3) an arrest which must be supported by probable cause. Hughes v. State, 132 So. 3d 933, 935 (Fla. 1st DCA 2014). A temporary detention of an individual may be justified if an officer has a specific concern for his or her own safety. McCray v. State, 177 So. 3d 685, 687 (Fla. 1st DCA 2015). "A valid stop does not necessarily mean that there can be a valid frisk. Under the Terry exception, a law enforcement officer, for his own protection or the safety of others, may conduct a pat down to find weapons that he reasonably believes or suspects are then in possession of the person whom

4

he has stopped." State v. Webb, 398 So. 2d 820, 822 (Fla. 1981); see also Terry v. Ohio, 392 U.S. 1, 30 (1968) ("[W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him."). "[A] protective search – permitted without a warrant and on the basis of reasonable suspicion less than probable cause – must be strictly 'limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.'" Minnesota v. Dickerson, 508 U.S. 366, 373 (1993) (citation omitted). "If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." Id. Giving a false name to law enforcement is not a crime unless it occurs during a lawful detention or arrest. Jackson v. State, 1 So. 3d 273, 277 (Fla. 1st DCA 2009).

Based upon the foregoing authority, the State properly concedes on appeal that Appellee was not guilty of providing the deputy with a false name given that he

5

was not detained or under arrest when he identified himself as "Shawn." The State also correctly concedes that the facts did not support the deputy's suspicions that a Terry stop was necessary. In other words, Appellee was unlawfully detained, handcuffed, and patted down. Therefore, the question in this case is whether the taint of the deputy's unlawful actions was purged by the discovery of Appellee's outstanding arrest warrant.

In State v. Frierson, 926 So. 2d 1139, 1143 (Fla. 2006), the Florida Supreme Court addressed the issue of "[w]hether evidence seized in a search incident to an arrest based upon an outstanding arrest warrant should be suppressed because of the illegality of the stop which led to the discovery of the outstanding arrest warrant." The defendant in the case was stopped by law enforcement for not using a left turn signal prior to or during the left-hand turn and because white light was emanating from a crack in the plastic lens covering the taillight. Id. at 1140-41. Upon being stopped, the defendant provided the officer with identification, and the officer, upon running a check on the defendant, learned that there was an outstanding warrant for his arrest. Id. at 1141. A search incident to the defendant's arrest revealed the firearm that formed the basis of the charge against him in the case. Id. The trial court denied the defendant's motion to suppress, and the Fourth District reversed. Id. In addressing the case, the Florida Supreme Court quoted the United States Supreme Court's opinion in Wong Sun v. United States, 371 U.S. 471 (1963), wherein the

Court held that not all evidence is the fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of police and that the more apt question is "'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" Id. at 1143 (citation omitted). The Florida Supreme Court explained that to properly undertake the inquiry mandated by Wong Sun, it had to consider three factors: "'(1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct.'" Id. (quoting United States v. Green, 111 F.3d 515 (7th Cir. 1997), which relied upon the three factors set forth in Brown v. Illinois, 422 U.S. 590 (1975)). In applying the three factors to the case before it, the Florida Supreme Court set forth in part:

> Applying the *Brown* factors in the present case, we reach the same result that the court reached in *Green*. The brief amount of time that elapsed between the illegal stop and the arrest of respondent weighs against finding the search attenuated, but this factor is not dispositive. In turning to the next factor, the outstanding arrest warrant was an intervening circumstance that weighs in favor of the firearm found in a search incident to the outstanding arrest warrant being sufficiently distinguishable from the illegal stop to be purged of the "primary taint" of the illegal stop. Crucially, the search was incident to the outstanding warrant and not incident to the illegal stop. The outstanding arrest warrant was a judicial order directing the arrest of respondent whenever the respondent was located. . . .

7

We believe to be very significant the third factor in the *Brown* analysis, which is whether the purpose and flagrancy of the official misconduct in making the illegal stop outweighs the intervening cause of the outstanding arrest warrant so that the taint of the illegal stop is so onerous that any evidence discovered following the stop must be suppressed. In this case, we do not find that the purpose and flagrancy of misconduct in illegally stopping respondent was such that the taint of the illegal stop required that the evidence seized incident to the outstanding arrest warrant should be suppressed. The law enforcement officer made a mistake in respect to the enforcement of the traffic law, but there was no evidence that the stop was pretextual or in bad faith.

Id. at 1144-45; see also Utah v. Strieff, 136 S.Ct. 2056, 2063 (2016) (holding that the evidence discovered on the defendant's person was admissible because the unlawful stop was sufficiently attenuated by the pre-existing arrest warrant and noting that the outstanding arrest warrant was a "critical intervening circumstance" that was "wholly independent of the illegal stop," that the discovery of the warrant broke the causal chain between the unconstitutional stop and the discovery of evidence by "compelling" the officer to arrest the defendant, and that, contrary to the defendant's argument, the officer's stop was not purposeful and flagrant where he sought information from the defendant to "find out what was happening inside a house whose occupants were legitimately suspected of dealing drugs" and was not engaged in a "suspicionless fishing expedition").

Turning to this case and the application of the Brown factors, we conclude that the brief time that elapsed between the illegality and the acquisition of the contraband supports a finding that the search that yielded the contraband was not

8

attenuated from the illegal conduct. However, as the supreme court found in <u>Frierson</u>, this first factor, standing alone, is not dispositive. As for the second <u>Brown</u> factor, we conclude that Appellee's outstanding arrest warrant constituted an intervening circumstance. Notwithstanding such, we agree with Appellee that because the evidence establishes that the deputy's unlawful seizure of his wallet was done in order to ascertain his identity, we are unable to say that the contraband found in a search incident to the outstanding arrest warrant was sufficiently distinguishable from the illegal detention, patdown, and seizure to be purged of the taint of the illegal actions. We agree with the Arizona Supreme Court that "[i]f the purpose of an illegal stop or seizure is to discover a warrant – in essence, to discover an intervening circumstance – the fact that a warrant is actually discovered cannot validate admission of the evidence that is the fruit of the illegality." <u>State v. Hummons</u>, 253 P.3d 275, 278 (Ariz. 2011).

We find support for our flagrancy determination in <u>Sanchez v. State</u>, 803 N.E.2d 215, 217-18 (Ind. Ct. App. 2004), where the appellate court explained that officers, after failing to successfully serve a warrant on an Antwan Luckett, noticed the defendant about forty to fifty feet away leaning in the window of a car; the officers thought he fit Luckett's description. Within ten feet, however, they realized the defendant was Hispanic, not African American. <u>Id.</u> at 218. The officers requested permission to speak to the defendant and subsequently required him to

9

remove his hands from his pockets and provide identification. Id. The defendant told them that he did not have identification but that his name was Carlos Hernandez. Id. After failing to find the defendant's identification as Carlos Hernandez on file, the officers took him to his uncle's apartment about forty feet away. Id. At the apartment, a Hispanic male opened the door and claimed not to recognize the defendant. Id. At that moment, the defendant whispered something in Spanish and the occupant replied that he was the defendant's uncle; when asked, however, the man did not know the defendant's name. Id. Thereafter, the defendant was handcuffed and transported to the "IPD Identification Unit" where he was fingerprinted and properly identified. Id. He was arrested for an open warrant and searched incident to that arrest; marijuana was found during that search. Id. The appellate court concluded that the "causal chain" was not sufficiently attenuated to dissipate any taint of the illegal stop. Id. at 223. It further set forth, "During the entire period of the illegal seizure, the Officers attempted to personally verify [the defendant's] identity. Only after his fingerprints conclusively proved him to be Sanchez, the outstanding warrant was discovered and the marijuana found. Thus, the record is silent as to any intervening circumstance." Id. When considering the purpose and flagrancy of the "official misconduct," the court noted that while an interrogation relating to one's identity or a request for identification does not, by itself, constitute a Fourth Amendment seizure, "[a]bsent any reasonable suspicion,

10

Sanchez should have been free to leave as soon as Officer Wellman was advised that the name Sanchez provided was 'not on file.' . . . Yet the Officers continued to interrogate Sanchez, and eventually transported him to the police department for fingerprinting. Therefore, we conclude that the Officers' actions were flagrant and intended to exploit an illegal arrest." Id.

Here, as stated, the deputy, a law enforcement officer with more than two decades of experience, unlawfully detained Appellee and patted him down after which he unlawfully seized Appellee's wallet due to his belief that Appellee provided a false name during a consensual encounter. This is a different situation than the one involved in Frierson where an officer made an unlawful traffic stop and then discovered an outstanding arrest warrant. In this case, the contraband that was ultimately discovered on Appellee's person was found as a direct result of the deputy's exploitation of his illegal actions. This, coupled with the fact that only a minute-and-a-half elapsed between the unlawful detention and search incident to the outstanding arrest warrant, has led us to conclude that suppression in this case was proper.

Accordingly, we AFFIRM.

WETHERELL and JAY, JJ., CONCUR.

11