# First District Court of Appeal
## State of Florida

_____

No. 1D17-1944

_____

Gerial Martell Deloach,

    Appellant,

    v.

State of Florida,

    Appellee.

_____

On appeal from the Circuit Court for Escambia County.
J. Scott Duncan, Judge.

April 3, 2019

Lewis, J.

Appellant, Gerial Martell Deloach, appeals his conviction and sentence for first-degree premeditated murder, arguing that the trial court erred in denying his motion to suppress and his motion for judgment of acquittal and in making various evidentiary rulings. Finding no merit in Appellant's arguments, we affirm and write only to address the denial of Appellant's motions.

After being indicted on the offense of first-degree premeditated murder with a firearm, Appellant filed a motion to suppress his statements made to law enforcement, asserting that

he did not freely, knowingly, and intelligently waive his *Miranda**\* rights because of the "several different mood and mind altering drugs" he had taken. During the hearing on the motion, Appellant testified that he had been in a car accident about a month before the police interview at issue, suffered a head injury, and began taking drugs such as "Xanax, Molly and weed," which he allegedly took prior to being interviewed by law enforcement. Appellant testified that he did not understand the rights waiver form that he signed. On cross-examination, he testified that he voluntarily went to the sheriff's office to speak to authorities. When asked if he knew that he was going to have to speak to them about the victim's murder, he affirmatively responded. When asked if any law enforcement officers twisted his arm or forced or threatened him, he replied, "No, sir." When asked if he told investigators that he was on drugs, he replied, "He never asked."

Investigator Michelle Wert testified that she had spoken with Appellant three times before the interview at issue. She did not see any signs of impairment from Appellant on the day of the interview. Appellant was attentive and appeared to understand what was being asked of him. There was never a point where Wert was concerned that Appellant did not understand what was going on. Wert testified, "In all three, four interviews I had with him, he was pretty consistent. His demeanor was the same. Speech was the same. I didn't detect any slurring, any slouching, any sleepiness, any hyperactivity."

In denying the motion to suppress, the trial court set forth in part:

> [T]he Court had the opportunity to review the – I guess it's about a four and a half hour recorded interview. So the Court has the benefit of that.
> The Court's heard the testimony today of the officer and [Appellant]. Based on what the Court has observed and the testimony taken, the Court's going to deny the defendant's motion to suppress.
> The Court finds that [Appellant] waived his right to counsel. He understood his rights. He voluntarily waived

---

\* *Miranda v. Arizona*, 384 U.S. 436 (1966.)

2

those rights. In the video, [Appellant's] speech was coherent. He answered questions appropriately and coherently. His answers to the questions were in response to those questions.

Also, the Court finds that he engaged in intelligent conversation with both deputies. Sometimes one deputy was in the room and one was out. And both deputies, he engaged in intelligent conversation and understood the questions that were asked and, again, gave answers that – appropriate answers responsive to that questions [sic].

Also, the case law is that as a general rule intoxicants or drugs really go to the credibility rather than the admissibility of a confession. It's only in very extreme circumstances that the admissibility of a confession can be suppressed based on someone being under the influence. In this case there's absolutely no evidence of any extreme influence.

Frankly, the Court doesn't find that there's much evidence of any influence of drugs based on the Court's observation of the recorded interview and the testimony given today. So for all those reasons, I'm going to deny the defendant's motion to suppress.

During trial, Investigator Wert testified that Appellant admitted to driving the vehicle that was involved in the offense. One of the State's witnesses who heard gunshots looked at one suspect in the eye and saw the other man who fired "one last shot" get in the driver's side of the vehicle. Another witness testified that Appellant's codefendant told her to go inside her home because something was "fixing to happen" and pulled up his shirt to show the witness a gun. Three seconds later, the witness heard gunshots. A third witness who had seen three people outside of the vehicle Appellant admitted to driving later saw the victim being followed by one of the other two men prior to his murder. A fourth witness saw the victim exit the vehicle before one of the other two men waved the victim back their way. A hat that was found near the victim belonged to Appellant. The medical examiner testified that the victim suffered nine gunshot wounds and that some of the exit wounds were much larger than other exit wounds, which made her "think that it was probably two different weapons" that were used.

3

Appellant's counsel moved for a judgment of acquittal, arguing in part that the State could not exclude the reasonable hypothesis that it was Appellant's codefendant who fired both weapons. As for the principal theory, counsel argued that there was no evidence that Appellant knew his codefendant intended to kill the victim. The prosecutor argued in response:

> In this case, the two men are alone with the victim, armed mere minutes before the killing. The evidence is they drop him off. They then circle back around. [Appellant] is driving the car. They circle back around in the same spot back in by the gate. The victim is then shot with two different weapons. There's been testimony that the driver fired at least one shot.
> [Appellant] drove the car. His hat is right by the victim. His prints are on the car. The victim's blood is there. He's then driving away from the scene and ends up ditching the car and then denies ever being there to all 20 police.

The trial court denied the motion, finding that the State presented a prima facie case. The jury found Appellant guilty as charged. The trial court adjudicated Appellant guilty and sentenced him to life imprisonment. This appeal followed.

Appellant first argues that the trial court erred in denying his motion to suppress evidence. No evidence can be used against a defendant unless *Miranda* warnings were given and waiver of the defendant's rights is established. *Ramirez v. State*, 739 So. 2d 568, 573 (Fla. 1999). Whether the waiver of *Miranda* rights is valid is determined through two separate inquiries:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a

4

court properly conclude that the *Miranda* rights have been waived.

*Id.* at 575 (citation omitted). The State bears the burden of proving by a preponderance of the evidence that a defendant's waiver of *Miranda* rights was knowing, intelligent, and voluntary, especially where a confession is obtained after the administration of *Miranda* warnings. *Id.* The ultimate issue of voluntariness is a legal, rather than a factual, question. *Id.*

A trial court's ruling on a motion to suppress is presumed correct, and an appellate court must interpret the evidence and reasonable inferences derived therefrom in a manner most favorable to sustaining the trial court's ruling. *State v. Dickey*, 203 So. 3d 958, 961 (Fla. 1st DCA 2016). It is for the trial court to make credibility determinations and to weigh the evidence. *Id.* An appellate court defers to the trial court's findings of fact if supported by competent, substantial evidence, but reviews *de novo* the application of the law to those facts. *Id.*

Appellant argues that there was evidence to support a finding that he did not waive his rights knowingly, intelligently, and voluntarily, such as his head injury, emotional problems, and drug use. What Appellant fails to recognize, however, is that there was also evidence to support the trial court's ruling. *See Hollinger v. State*, 620 So. 2d 1242, 1243 (Fla. 1993) ("While the evidence might also support a contrary view, we believe there is sufficient evidence to support [the trial court's] finding."). Appellant testified on cross-examination during the suppression hearing that he voluntarily went to the sheriff's office and knew that he would be talking to investigators. Investigator Wert, who had spoken to Appellant on a number of occasions before the interview at issue, saw no signs of impairment from Appellant on the day of the interview. Appellant was attentive and appeared to understand what was being asked of him. Wert testified, "In all three, four interviews I had with him, he was pretty consistent. His demeanor was the same. Speech was the same. I didn't detect any slurring, any slouching, any sleepiness, any hyperactivity." The trial court, which viewed the interview video, found that Appellant's speech was coherent and that he appropriately answered questions. The court also found that Appellant engaged in intelligent

conversations and that there was "absolutely" no evidence that he was under the influence of intoxicants or drugs. Thus, Appellant has failed to show that the trial court erred in denying his motion to suppress. *See Rigterink v. State*, 193 So. 3d 846, 864 (Fla. 2016) (holding that the trial court's finding that the appellant failed to establish that his drug use demonstrated that his statement was not freely, knowingly, and voluntarily made was supported by competent, substantial evidence); *Orme v. State*, 677 So. 2d 258, 262-63 (Fla. 1996) (acknowledging that there was conflicting evidence in the record as to whether the appellant was too intoxicated with drugs to knowingly and voluntarily waive his right to silence but setting forth "[h]owever the officers who actually took Orme's statements testified that he was coherent and responsive" and "the statements were taped, and the trial court after reviewing these tapes, concluded that the evidence supported the state's theory").

Appellant next argues that the trial court erred in denying his motion for judgment of acquittal. An appellate court reviews a trial court's denial of such a motion de novo to determine whether the evidence is legally sufficient to sustain a conviction; in doing so, the court must consider the evidence and all reasonable inferences therefrom in a light most favorable to the State. *Kemp v. State*, 166 So. 3d 213, 216 (Fla. 1st DCA 2015). In a case where the State submitted some direct evidence, the denial of a motion for judgment of acquittal will be affirmed if it is supported by competent, substantial evidence. *McWatters v. State*, 36 So. 3d 613, 631 (Fla. 2010). In a wholly circumstantial evidence case, however, a special standard applies whereby a conviction cannot be sustained unless there is competent, substantial evidence inconsistent with any reasonable hypothesis of innocence. *Id.*; *see also Knight v. State*, 186 So. 3d 1005, 1010 (Fla. 2016) (explaining that the circumstantial evidence standard applies when all of the evidence of the defendant's guilt is circumstantial, not when any element is supported only by circumstantial evidence); *Kocaker v. State*, 119 So. 3d 1214, 1225 (Fla. 2013) (explaining that the State is only required to introduce competent evidence inconsistent with the defendant's theory of events and need not conclusively rebut every possible variation of events that may be inferred).

6

According to Appellant, the State's evidence was not sufficient to establish the offense of first-degree murder because the testimony that he was the actual shooter was questionable. However, we agree with the State that a rational factfinder could have determined that Appellant shot the victim. As we explained, Appellant told law enforcement that he drove the vehicle involved in the offense. One of the State's witnesses testified that the man she saw fire a shot got into the driver's side of the vehicle. Moreover, the medical examiner testified that the victim was probably shot by two different weapons given the bullets' exit wounds. The State is also correct that a rational factfinder could have determined that Appellant acted as a principal to the offense by driving the vehicle. *See Ferrell v. State*, 686 So. 2d 1324, 1329 (Fla. 1996) (holding that while the appellant may not have actually pulled the trigger, the evidence established that he played an integral part in the crimes and in luring the victim to his death); *Hall v. State*, 403 So. 2d 1321, 1323 (Fla. 1981) (holding that the appellant drove the victim's car to the wooded area while "Ruffin" followed in his own car and the two were together at the site of the victim's assault and death and holding that the facts supported the jury's conclusion that even if the appellant did not pull the trigger, he was a principal to the crime of murder). Based upon the evidence, the trial court did not err in denying Appellant's motion for judgment of acquittal.

Accordingly, we affirm Appellant's conviction and sentence.

AFFIRMED.

WETHERELL and WINOKUR, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

7

David J. Joffe of Joffe Law, P.A., Fort Lauderdale, for Appellant.

Ashley B. Moody, Attorney General, Tallahassee, for Appellee.