904 So.2d 534 (2005)
Douglas SMITH, Appellant,
v.
STATE of Florida, Appellee.
No. 1D04-0245.
District Court of Appeal of Florida, First District.
May 25, 2005.
Rehearing Denied June 28, 2005.
*535 L. Lee Lockett; Harris Guidi, Rosner, Dunlap, Rudolph, Catlin & Bethea, P.A., Jacksonville, for Appellant.
Charlie Crist, Attorney General, Linda Horton Dobson, and Trisha Meggs Pate, Assistant Attorneys General, Office of the Attorney General, for Appellee.
*536 HAWKES, J.
When Appellant, Douglas Smith, returned to his home, he found two deputy sheriffs in his yard. The deputies prohibited Appellant from entering[1] his home based on a suspicion that he sold illegal drugs from the home. Appellant negotiated with the deputies to allow them to search his home only after the deputies told him they had probable cause and were in the process of obtaining a search warrant.[2]
Appellant now appeals the denial of his motion to suppress, arguing the deputies lacked probable cause to detain him and secure his home, and that the negotiation did not result in his "consent," but was, instead, an involuntary submission to authority. We agree and reverse.

FACTUAL & PROCEDURAL HISTORY
Nassau County Sheriff's Deputies received an anonymous tip that Appellant was growing and selling marijuana in his home. After an investigation revealed nothing to corroborate the tip, the deputies went to Appellant's home, and sought and gained consensual entry. Once inside, the deputies were refused consent to search the home and obtained no incriminating statements when they asked Appellant if he was selling marijuana. The deputies testified they noticed nothing unusual in the home. However, when Appellant's girlfriend walked by, one of the deputies detected the odor of burnt marijuana on her person. The deputy asked the girlfriend to step out to the front porch, then requested her consent to search the home. When she refused, the deputy asked that she encourage Appellant to consent to a search of his home. This request was also refused. After being repeatedly denied consent to search, the deputies left the home and positioned themselves next to Appellant's property for surveillance purposes. Subsequently, Appellant, his girlfriend, and their child left the home.
While Appellant was gone, one deputy left to seek a search warrant, while another arrived and began using a thermal-imaging device[3] to look for unnatural heat sources used to grow marijuana. Nothing incriminating was found. In the meantime, Appellant returned, was told to stay in his car, and was informed he would not be allowed back into his home because the deputies had secured the premises and were obtaining a search warrant. After being told the deputies believed they had probable cause to obtain the warrant, Appellant negotiated to allow his home to be *537 searched, provided the deputies agreed not to involve his girlfriend and child. Ultimately, contraband was found.
Appellant moved to suppress the evidence as being the result of an unlawful stop, detention, and seizure. The motion was denied without comment.

SECURING THE DWELLING
"Securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents." Segura v. United States, 468 U.S. 796, 810, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). However, "[p]robable cause cannot be based on mere suspicion, but must be based on facts known to exist." Brown v. State, 330 So.2d 861, 862 (Fla. 4th DCA 1976) (emphasis added) (citation omitted).
Here, the deputies secured Appellant's home by preventing him from entering. However, for their actions to be legal, the deputies must have had probable cause. The "facts known to exist" by the deputies were that they had received an anonymous tip that was not confirmed, one deputy detected the odor of burnt marijuana on the girlfriend, nothing incriminating was seen inside the home or revealed by a thermal-imaging scan, and Appellant made no incriminating statements. From these facts we must determine whether the deputies had probable cause to obtain a search warrant, that would have justified securing the dwelling.
Because the anonymous tip had not been proven reliable,[4] it added nothing to the determination of probable cause. The only incriminating fact "known to exist" was the odor of burnt marijuana on the girlfriend. However, like "plain view," whatever probable cause this would have provided is limited to the location of the "plain smell,"[5] here, the girlfriend. The deputies took no action when the girlfriend was present in the home, but waited to seek a warrant until after her departure, which took the only incriminating fact they had with her.
The odor on the girlfriend, by itself, does not give the officers probable cause to believe marijuana was present in the home. If it did, the deputies could search anywhere the girlfriend went, even after she was no longer present. In that case, the deputies would be able to search the home because she was there, and then the car after she entered the car, and one would have to conclude, if she stopped at a neighbor's house, the deputies could search that home as well. We decline the State's invitation to stretch the "plain smell" doctrine into a de facto, roving proxy for probable cause.
The Fifth District Court of Appeal appears to hold to the contrary, concluding the odor of marijuana on a person, by itself, justifies searching the area from which the person had recently come. See State v. Wells, 516 So.2d 74 (Fla. 5th DCA *538 1987); State v. Bennett, 481 So.2d 971 (Fla. 5th DCA 1986). Because we do not believe that wherever the odor of marijuana has been, probable cause remains, we certify conflict.
Since the deputies did not have probable cause to obtain a warrant, they had no authority to secure Appellant's home and prevent him from re-entering.[6] The deputies' action in securing Appellant's home and preventing him from entering, without probable cause, was unreasonable.

VOLUNTARY CONSENT
The State argues it did not need probable cause or a warrant to search Appellant's home because Appellant consented to the search. This argument is without merit. "A consent to search is valid when the consent is freely and voluntarily given and the search is conducted within the scope of the consent." Minter-Smith v. State, 864 So.2d 1141, 1143-44 (Fla. 1st DCA 2003). However, consent is not voluntary if it was the result of submission to authority. See Reynolds v. State, 592 So.2d 1082, 1086 (Fla.1992). Where officers represent they have a lawful authority to search, a suspect's resulting acquiescence is not an intentional and voluntary waiver of Fourth Amendment rights. See Bumper v. North Carolina, 391 U.S. 543, 548-50, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).
Here, the deputies told Appellant he could not enter his home because they were obtaining a warrant for which they believed they had probable cause. This had a coercive effect on Appellant. It was reasonable for Appellant to believe the deputies would obtain the warrant, and possibly arrest both himself and his girlfriend. To avoid that situation, Appellant consented. Under these circumstances, Appellant's "consent" was submission to a show of authority and thus, involuntary.
Because the deputies lacked probable cause to secure Appellant's home, and Appellant's consent was not freely and voluntarily given, the search was illegal. The trial court's denial of the motion to suppress is REVERSED and the case REMANDED for proceedings consistent with this opinion.
BENTON and PADOVANO, JJ., concur.
NOTES
[1] In their reports and depositions, the deputies testified Appellant was "detained." Surprisingly, at trial, the only deputy to testify stated their prior use of the term "detained" meant only that Appellant could not enter his residence; not that he could not leave the premises. The word "detained" is a term of art, having a particular legal meaning in the law enforcement context. To "detain" someone is to hold the person in custody; confine them; or subject them to a compulsory delay. See BLACK'S LAW DICTIONARY 480 (8th ed.2004). The deputy who testified at trial was a narcotics detective with ten years of experience. It defies belief that a narcotics detective with ten years of experience would not know the meaning of a term used extensively and almost exclusively by law enforcement officers. Consequently, where law enforcement officers use the term "detained," knowledge of the term's legal significance should be imputed to them.
[2] A search warrant was never obtained.
[3] Although not an issue in this case, we note that, without a search warrant, using a thermal imaging device to scan a home to determine whether heat emanating from the home is consistent with an indoor marijuana growing operation is an illegal search in violation of the Fourth Amendment. See Kyllo v. United States, 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001).
[4] Anonymous tips can provide the basis for reasonable suspicion if the reliability of the tip can be established. See J.L. v. State, 727 So.2d 204, 206 (Fla.1998).
[5] See Mahla v. State, 383 So.2d 730, 731 (Fla. 1st DCA 1980) (holding officer's detection of marijuana odor inside truck was sufficient probable cause for a warrant); Berry v. State, 316 So.2d 72, 73 (Fla. 1st DCA 1975) (finding sufficient probable cause where officer detected odor of marijuana emanating from car); Cf. State v. Betz, 815 So.2d 627 (Fla.2002) (finding officers had probable cause to search vehicle under totality of circumstances where they detected odor of burnt marijuana emanating from vehicle and defendants acted suspiciously).
[6] We note that securing a home, when based on probable cause to protect evidence, would not always authorize deputies to prohibit the homeowner from entering. The probable cause may only result in the authority to accompany the homeowner into his home. See Illinois v. McArthur, 531 U.S. 326, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001) (concluding where police officers had probable cause to believe home contained illegal drugs and reasonable concerns that, if unrestrained, homeowner would destroy drugs before officers could return with a warrant, officers did not violate Fourth Amendment by preventing homeowner from entering his home unaccompanied by officer). Like all Fourth Amendment issues, an analysis of what is reasonable under the circumstances of the case will determine the scope of permissible law enforcement action.