**Crystal Lynn GUZMAN, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2010–SC–000415–DG.

Supreme Court of Kentucky.

June 21, 2012.

Rehearing Denied Sept. 20, 2012.

Erin Hoffman Yang, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, John Paul Varo, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

## OPINION OF THE COURT

Just after 1:00 a.m., on the morning of September 10, 2008, two Lexington city police officers responded to a call from a neighbor of Appellant, Crystal Lynn Guzman, in the Meadowthorpe area. The neighbor lived downstairs from Guzman, whose apartment was a flight of steps above hers. Guzman's boyfriend had rented the apartment, but was in jail. The neighbor reported that Guzman was dealing in drugs and engaging in prostitution. She also stated that she had observed Guzman going into her apartment with a white man and a black man that night. She had exchanged some unfriendly conversation with the black man.

As the officers were visiting with the neighbor, a black man, Paul Demerit, was observed heading down the stairs of the apartment complex. He was identified by the neighbor as the same black man she had seen with Guzman earlier that evening. The officers stopped and talked to Demerit and learned that he was on probation for trafficking in drugs. After a search of Demerit's person and vehicle failed to produce any contraband or illegal substances, he was released.

The officers then proceeded to Guzman's apartment to conduct a "knock and talk." It was past one o'clock in the morning when the officers knocked on Guzman's door. After some delay, the door was answered by Guzman's friend, Teddy Hendren. He explained that he was slow in answering the door because he and Guzman were having sex on a mattress on the living room floor when the officers had arrived. Guzman consented to the officers entering the apartment. Upon entering, she was lying on the mattress, under a

cover and partially clothed. Guzman put on a pair of pants underneath the covers.

Once the officers were in the apartment, they observed a cardboard box next to the mattress with a lamp on it. When the lamp was turned on, they noticed a blanket tacked up over a wide doorway. The officers asked Guzman if anyone else was in the apartment and she responded in the negative. Nevertheless, one of the officers proceeded to conduct a "protective sweep" of the apartment and entered into a bedroom and kitchen area. While doing the walk through, the officer saw a spoon in the kitchen sink that appeared to be burned on the bottom. The officer picked up the spoon and examined it and found that it had white residue on it.

When questioned, both Guzman and Hendren denied any knowledge about the spoon. When the officer asked Guzman for permission to search the apartment, she asked what would happen if she refused. The officer then advised Guzman that one officer would remain in the apartment while the other went and applied for a search warrant. It was at this time that she consented.

Cocaine and drug paraphernalia were found in the apartment. At trial, a motion to suppress this evidence was denied, after which Guzman entered a conditional plea reserving the right to appeal the search issue. She was sentenced to one year for first-degree possession of a controlled substance and twelve months for possession of drug paraphernalia, which were probated for three years. Her conditional plea of guilty was affirmed by the Court of Appeals. In this discretionary review, Guzman complains that the Court of Appeals' analysis finding a reasonable suspicion to justify the protective sweep of her apartment was flawed.

■ In reviewing a trial court's decision on a motion to suppress, we are to examine the trial court's findings of fact for clear error, upholding findings supported by substantial evidence. *Peyton v. Commonwealth,* 253 S.W.3d 504 (Ky.2008); RCr 9.78. Thereafter, we must conduct a *de novo* review of the trial court's application of the laws to those facts. Since the facts in this case are uncontested, we move to a *de novo* review of the determination made by the trial court as a matter of law.

■ It has long been established law that police may search, incident to a lawful arrest, the area that is considered to be in the immediate control and possession of the person being arrested. *United States v. Rabinowitz,* 339 U.S. 56, 60, 70 S.Ct. 430, 94 L.Ed. 653 (1950). The view of the U.S. Supreme Court in 1969 stated there is no justification for "routinely searching any room other than that in which an arrest occurs...." *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). That limitation has been modified substantially, however, by our nation's highest court, holding that law enforcement officers may conduct a protective sweep for their own safety. Objects found and seized therein are admissible at trial as an exception to the warrant requirement. *Maryland v. Buie,* 494 U.S. 325, 334, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990).

Today, for the first time, this Court follows and adopts the holding in *Buie.* We note, in passing, that four years before *Buie* our own Court of Appeals recognized that a "protective sweep" or "safety check" is an exception to the warrant requirement in Kentucky law. *Commonwealth v. Elliott,* 714 S.W.2d 494, 496 (Ky.App.1986). Guzman points out that the *Buie* case is distinguishable from the facts of this case in that the "protective sweep" there was performed incident to an in-home arrest on a warrant and was for the purpose of

protecting the safety of the police. We agree that *Buie* is clearly distinguishable. Unlike this case, the holdings in both *Buie* and *Elliott* dealt with a limited sweep in conjunction with an in-home arrest.

Even when a search is authorized by consent, the scope of the search is limited by the terms of its authorization. *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 547 (6th Cir.2003). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991) (internal quotations omitted). Also, it has been held that a coercive ruse to obtain consent to enter a residence in the course of a "knock and talk" undermines the consent and violates the defendant's Fourth Amendment rights. *Krause v. Commonwealth*, 206 S.W.3d 922 (Ky.2006).

A close study of the sequence of events in the search at issue in this case is important. First of all, the officers were in the living room of Guzman's apartment following a "knock and talk" with her consent and without either probable cause or exigent circumstances. Their presence in her home was only the result of a complaint by a neighbor. They were also in Guzman's living room after having made full accountability of the three persons— one black male, one white male, and Guzman—who had been observed by the neighbor going in and out of the apartment. No evidence of criminal wrongdoing was observed in the living room. The officers were told by Guzman that no one else was in the apartment. Had they asked for consent to conduct the sweep and had permission been given, the outcome of this case may have been entirely different. However, the officers did not ask for such permission and conducted the sweep without a search warrant in hand or both probable cause and exigent circumstances. In absence of consent, the police may not conduct a warrantless search or seizure without both probable cause and exigent circumstances. *Kirk v. Louisiana*, 536 U.S. 635, 638, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002). Once the officers were in a non-consent area of the apartment, they discovered the evidence on the spoon in the kitchen sink which, in effect, became "fruit of the poisonous tree."

This is not a case of a *"Terry* stop," whereby officers have restrained a person's movement upon "articulable suspicion" of a crime being committed and are allowed to frisk for weapons. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Nor is it the same as a roadside stop and a search of the inside of a vehicle as allowed in *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). We do not address today whether the officers would have been allowed to conduct a sweep of the room into which they were invited, pursuant to the reasoning of these cases. Suffice it to say that, here, they went beyond that limited area into other parts of the apartment where consent had not been given. And they did so without either a warrant or probable cause and exigent circumstances. This action takes it out of the holding in *Buie.* Certainly, under the "objective reasonableness" standard, a reasonable person inviting the police into his or her living room would not have understood the invitation to extend to the entire house.

Much is made by the Commonwealth of the blanket over the door to an interior room of the apartment as being some ominous sign of danger lurking within. For constitutional purposes, the covering is simply a barrier to an entranceway that is less attractive and substantial per-

haps than a door, but still signaling an expectation of privacy. It may speak as much to poverty or want as it does to concealment. Our ancient Fourth Amendment to the U.S. Constitution and Section 10 of our Kentucky Constitution do not discern between rich or poor. This apartment, its occupants, and their unseemly activities may not have measured up to an acceptable standard of decency. However, the stirring words of William Pitt, eloquently spoken more than two centuries ago, capture the soul of our Fourth Amendment protections. "It may be frail; its roof may shake; the wind may blow through it; the storm may enter; the rain may enter; but the King of England cannot enter; all his forces dare not cross the threshold of the ruined tenement!"

We are not insensitive to the safety and protection of law enforcement officers conducting investigations in strange places during the wee hours of the morning. Here, however, a simple request for consent may have allowed them to search the apartment; or the officers could have invited Guzman to step outside for the interview. Well-trained and astute law enforcement officers are going to tread cautiously in these situations when invited into suspicious places. Here, while still in the investigatory stage and with no basis for a warrant or arrest, the potential for resistance or evasion was minimized.

In essence, the law, as we state it in this case, is that consent by the owner for the police to enter his home does not extend to the entire house, even for a protective sweep. The motion to suppress should have been granted because the protective sweep was illegal and the contraband discovered was the result of this unlawful invasion as fruit of the poisonous tree.

Accordingly, the Court of Appeals' opinion is reversed and the matter remanded to the trial court for further proceedings consistent with this opinion.

CUNNINGHAM, NOBLE, SCHRODER, SCOTT, and VENTERS, JJ., concur. MINTON, C.J., and ABRAMSON, J., concur in result only. CUNNINGHAM, J., also concurs by separate opinion in which SCHRODER and VENTERS, JJ., join.

CUNNINGHAM, J., Concurring:

I concur with the majority opinion. Our holding today is easy for law enforcement to follow. When you have consent to enter into one's living room, you are not invited into the kitchen, or the bedroom, or the basement. If you do not deem it safe to enter the living room, do not enter. In a "knock and talk" conducted in such ominous situations, one might consider continuing the investigation on the front porch.

I am compelled to write further, however, to address a dormant issue lying near the surface in this case which has the potential of appearing before us in a much more ominous posture. The majority chooses not to address it because it was not necessary for our resolution of the case. However, I wish to address it in order to both warn and guide law enforcement about a practice that I suspect is widespread, and one that in the future could be an exploding land mine. Here, we are talking about the suppression of drugs. When the issue appears squarely before us in full bloom, it could mean the suppression of a murder weapon. Hopefully, this writing will help us avoid that more critical situation.

When the officer asked Guzman for consent to search the entire apartment after finding the residue-laden spoon in the kitchen, Guzman inquired as to what would happen if she failed to consent to the

search. The officer informed her that one of them would remain at the scene while the other one would go and get a search warrant. In other words, the officer assured Guzman that the apartment would be seized until a warrant could be obtained. With that revelation, Guzman consented to the search.

"Freezing the scene" while an officer goes and obtains a search warrant is fraught with constitutional problems. In this instance, with the evidence found in the kitchen being fruit of the poisonous tree, the officer would not have had sufficient basis to obtain a search warrant. Neither would the officer have had probable cause to seize the property.

Misinformation or deception by a law enforcement officer for purposes of obtaining consent to search will not be upheld. For instance, if an officer falsely assures a homeowner that he possesses a search warrant—when he does not—in order to gain consent to search, said search will be considered coercive and lacking sufficient consent. *Bumper v. North Carolina,* 391 U.S. 543, 549–50, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

Also, we have held that deception used by a police officer in obtaining a waiver of constitutional rights has been considered coercive for purposes of gaining consent. *Krause v. Commonwealth,* 206 S.W.3d 922 (Ky.2006).

The practice by law enforcement officers of "freezing the scene" while awaiting a search warrant has become more prevalent and consequently, addressed more frequently by courts in the last ten to fifteen years. This practice has become widely accepted, but several key elements must be present for the seizure to be reasonable. Simply put, "freezing the scene" is reasonable only if the police have probable cause.

In the case of *Illinois v. McArthur,* 531 U.S. 326, 331, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001), the United States Supreme Court held that, under the Fourth Amendment, it may be reasonable for police to prevent a person from entering an area while a search warrant is sought. In that case, the police restrained the defendant from re-entering his home after they had escorted his wife to the residence to remove some of her belongings and she informed the officers that there were drugs inside. The officers seized the property while a search warrant was being obtained and kept the defendant from re-entering the trailer. Among other factors which the court found was necessary for such an imposition was the existence of probable cause.

Seventeen years earlier, the United States Supreme Court in *Segura v. United States,* 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), determined that the police, armed with reliable information that an apartment contained drugs, might lawfully seal the apartment off from the outside restricting entry into the apartment while waiting for a search warrant. In other words, that case afforded the right of law enforcement to seize property. It too, like *McArthur,* required the existence of probable cause.

Our nation's highest court has acknowledged that there is a distinction in the constitutional standards between a search and a seizure. Said the United States Supreme Court in *Segura:*

A seizure affects only the person's possessory interests; a search affects a person's privacy interests. Recognizing the generally less intrusive nature of a seizure, the Court has frequently approved warrantless seizures of property, *on the basis of probable cause,* for the time necessary to secure a warrant, where a warrantless search was either held to be

or likely would have been held impermissible. (Emphasis added).

*Id.* at 806, 104 S.Ct. 3380 (internal citations omitted).

The Court, in *Segura*, describes this exact situation in its holding.

Specifically, we hold that where officers, having probable cause, enter premises, and with probable cause, arrest the occupants who have legitimate possessory interests in its contents and take them into custody and, for no more than the period here involved, secure the premises from within to preserve the status quo while others, in good faith, are in the process of obtaining a warrant, they do not violate the Fourth Amendment's proscription against unreasonable seizures.

*Id.* at 798, 104 S.Ct. 3380.

We can think of other examples. For instance, where a chest has been removed from a motor vehicle based on probable cause and the driver and occupants of the vehicle have been arrested and taken into custody, there is probable cause but there no longer exists exigent circumstances. The chest can be seized, taken to the police station, and a warrant obtained to search its contents. That's because the possessory interest requires only the probable cause to seize; whereas, the privacy interest involved in a warrantless search requires both probable cause and exigent circumstances. In other words, while a warrantless search could not be conducted without probable cause and exigent circumstances, a seizure can be conducted if there is probable cause but not exigent circumstances when the scene is frozen while a search warrant is obtained.

This Court has not squarely confronted the constitutional ramifications of "freezing the scene" in a search situation. Our neighboring state of Tennessee has. In the case of *U.S. v. Ervin*, the officers were without probable cause to believe the residence contained contraband at the time of the seizure. 2010 WL 200799 (M.D.Tenn. Jan. 14, 2010). Also, in the case of *Smith v. State*, 904 So.2d 534, 537 (Fla.Dist.Ct. App.2005), the Florida District Court of Appeal held that it was a violation of the Fourth Amendment where sheriffs deputies, without probable cause, secured a dwelling and prevented a defendant from entering his home and, in effect, seized that property.

The common thread running through all seizure cases, however, is the requirement for the element of probable cause which, in this instance, was missing. The residue-laden spoon was found during an impermissible sweep of the apartment and was, therefore, "fruit of the poisonous tree." It is longstanding constitutional law that probable cause cannot be established by "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 484–485, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *see also Nardone v. United States*, 308 U.S. 338, 340–342, 60 S.Ct. 266, 84 L.Ed. 307 (1939). In this case, had the discovery of the residue-laden spoon been made during a consensual search, there would have existed probable cause and exigent circumstances since the occupants had not been arrested and removed from the scene. This would entitle law enforcement officers to conduct a warrantless search or, if they chose the precautionary route, a seizure of the apartment while a warrant was obtained.

We are careful to point out, however, that a threat by law enforcement officers to seize the apartment and forestall an actual search until a warrant is obtained is improper without probable cause. Any consent obtained this way shall be considered invalid and contraband found pursuant to the search inadmissible.

In summary, law enforcement should take away two important learning points from this case. First, unless there is a warrant, or probable cause and exigent circumstances, officers are limited to entering only the area to which consent is given. Secondly, before an officer makes assurances that the house or apartment will be seized while awaiting a search warrant, there has to be probable cause. Otherwise, any consent obtained by this improper admonition will be considered invalid, and any evidence discovered as a result of the tainted consent shall be suppressed.

SCHRODER and VENTERS, JJ., join this concurring opinion.