NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


ZACHARY DANIELS,                        )
                                        )
        Appellant,                      )
                                        )
v.                                      )       Case No. 2D15-4371
                                        )
STATE OF FLORIDA,                       )
                                        )
        Appellee.                       )
_____)

Opinion filed January 18, 2017.

Appeal from the Circuit Court for Polk
County; Glenn T. Shelby, Judge.

Rupak R. Shah of Escobar & Associates,
P.A., Tampa, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Ha Thu Dao, Assistant
Attorney General, Tampa, for Appellee.


KHOUZAM, Judge.

        Zachary Daniels pleaded no contest to a number of drug-related offenses,

reserving the right to appeal the denial of his dispositive motion to suppress.  We

reverse.

Daniels had an active misdemeanor warrant out of Alachua County for failure to appear. On February 27, 2013, sometime before 1:00 p.m., Detective Kenneth Noad received an anonymous tip, relayed by a fellow officer, that Daniels resided in the New Jersey Road area of Lakeland, Florida, on an unknown street in a house with the address 3036; drove a red truck with large wheels and tires lifted off the frame; and possessed firearms and cannabis in his residence. Detective Noad did not investigate the source of the tip or otherwise verify the allegations. After searching the area described in the tip, at approximately 3:30 p.m. Detective Noad located Daniels in the driver's seat of a red Chevrolet 2500 pickup truck with large chrome wheels, parked in the carport of 3036 Pineway Avenue.

Detective Noad identified Daniels, placed him in handcuffs, and sat him on the ground.[1] Detective Noad, unsure if there was anyone else in the house, approached the front door of the house, which was slightly ajar. He closed the door after learning that Daniels had a dog that he did not wish to be let out of the house. In order to ascertain if anyone else was on the premises, and without obtaining consent, Detective Noad walked around to the north side of the house. From the curtilage of the residence, he peered into the house through an unobstructed window and observed a pistol case, rifle scope, and a small amount of marijuana on a table.

When Detective Noad reapproached Daniels, Daniels said that the house belonged to his friends and that he was just staying there. Law enforcement officers contacted the landlord of the home, who identified Daniels as one of the primary

---

[1]Daniels was later placed in a chair and eventually placed into the back of a patrol car where he remained for the entirety of the investigation which lasted over eight hours.

residents listed on the lease. The landlord also identified Kayla McBride as an occupant of the home, but when officers reached out to McBride to obtain consent to search, she informed them that she no longer resided there.

Having failed to obtain consent from an occupant, the State applied for a search warrant based on an affidavit provided by Detective Noad. The State submitted the application around 8:30-9:00 p.m. The warrant application included the information from the anonymous tip as information provided by a fellow officer without acknowledging the original source of the information. As to Detective Noad's observation of the contraband in the residence, the application provided in pertinent part: "Your affiant observed a small amount of suspected cannabis, a rifle scope, and plastic handgun case in plain view on the kitchen table within the place to be searched." The application did not state that Detective Noad made this observation from the curtilage on the north side of the house. Based on the affidavit, the magistrate issued the search warrant.

Detective Noad returned to the home and searched it pursuant to the warrant. He found more than 800 grams of cannabis, two firearms, drug paraphernalia, a ledger, and a scale. Daniels was kept on the scene until almost midnight when the search was concluded. The State charged Daniels with: (1) actual or constructive possession of a structure used for trafficking, sale, or manufacture of controlled substances; (2) possession of cannabis within 1000 feet of a park, community center, or recreational facility with intent to sell; (3) possession of a firearm or ammunition by a convicted felon; (4) possession of cannabis over twenty grams; and (5) possession of drug paraphernalia.

Daniels filed a motion to suppress the evidence seized from the home. He argued, in pertinent part, that Detective Noad's intrusion onto the curtilage of the home was unlawful and that the affidavit in support of the search warrant failed to establish probable cause. The court held an evidentiary hearing on the motion and denied it, finding that Detective Noad's entry onto the curtilage was justified on the basis of officer safety. Daniels entered a plea of no contest to the charges but reserved the right to challenge the trial court's denial of his motion to suppress.

"[I]n reviewing a trial court's ruling on a motion to suppress, this court must give deference to the trial court's factual findings if those findings are supported by competent, substantial evidence, but this court must review the trial court's ruling of law de novo." State v. Roman, 103 So. 3d 922, 924 (Fla. 2d DCA 2012). "A warrantless search of a home is 'per se unreasonable under the Fourth Amendment . . . and Article I, section 12, of the Florida Constitution, subject to a few specifically established and well-delineated exceptions.' " State v. Fultz, 189 So. 3d 155, 158 (Fla. 2d DCA 2016) (quoting State v. Boyd, 615 So. 2d 786, 788 (Fla. 2d DCA 1993)). The Fourth Amendment's protection of the home extends to the curtilage. See Abel v. State, 668 So. 2d 1121, 1122-23 (Fla. 2d DCA 1996). Thus, without a warrant or an exception to the warrant requirement, a law enforcement officer has no right to physically intrude into the curtilage of a house. Powell v. State, 120 So. 3d 577, 585 (Fla. 1st DCA 2013).

One such exception to the warrant requirement is a protective sweep—"a quick and limited search of the premises, incident to an arrest and conducted to protect the safety of police officers or others." Diaz v. State, 34 So. 3d 797, 801 (Fla. 4th DCA 2010) (quoting Vasquez v. State, 870 So. 2d 26, 30 (Fla. 2d DCA 2003)). Officers may

conduct a sweep regardless of whether or not the arrest occurred inside or outside the home.  Id. at 802.  However, a protective sweep may only be performed when officers "have a reasonable, articulable suspicion that the protective sweep is necessary due to a safety threat or the destruction of evidence."  Id. (emphasis added).

The trial court's finding that Detective Noad's intrusion onto the curtilage was justified for officer safety was not supported by competent, substantial evidence because there are no facts giving rise to a reasonable, articulable suspicion that a sweep was necessary to ensure officer safety or to prevent the destruction of evidence. While Detective Noad testified that he was unsure if there were other people in the house, a mere suspicion that there may be additional persons on the premises was insufficient to justify an intrusion onto the curtilage.  See Roman, 103 So. 3d at 925 ("[B]ecause there was no evidence that the house was occupied, the trial court correctly found that the protective sweep of the house for officer safety was improper as there were no specific and articulable facts supporting a reasonable belief that there was an individual in the house who could pose a danger to law enforcement."); Klosieski v. State, 482 So. 2d 448, 450 (Fla. 5th DCA 1986) ("The fact that the police did not know, as an absolute certainty, whether more people were in the house, as found by the trial court, cannot justify entry into the house.").

The State argues that Detective Noad's entry onto the curtilage was justified because the arrest took place in front of the residence, officers were warned that Daniels' dog should not be let out, and when law enforcement officers arrived, they encountered another individual who was moving out of the residence and did not wish to speak with the officers.  This argument is without merit.  While the State represented

- 5 -

in its answer brief and at oral argument that officers encountered an individual moving out of the house on the day of the search, the record refutes the State's position. At the hearing on Daniels' motion to suppress, a law enforcement officer testified that the day after the search of Daniels' residence he encountered an individual loading his possessions on to a moving truck who did not wish to talk to officers and left as soon as the officers arrived. This encounter, having taken place a day after the search warrant was issued and executed, has no bearing on whether Detective Noad's warrantless intrusion onto the curtilage was justified. And the remaining allegations—the location of the arrest and the presence of a dog—do not give rise to a reasonable, articulable suspicion that officer safety was jeopardized.

Having determined that Detective Noad's warrantless intrusion onto the curtilage of Daniels' house violated the Fourth Amendment, we must determine if the warrant is otherwise supported by probable cause.

> Where a court finds that police unlawfully obtained some of the evidence contained in the application for the search warrant, the court must then determine if there is probable cause to support the issuance of the warrant based on any independent and lawfully obtained evidence. "[T]he court must excise the invalid allegations from the affidavit and determine whether sufficient valid allegations remain to support a finding of probable cause."

Roman, 103 So. 3d at 925 (alteration in original) (citation omitted) (quoting State v. Hood, 68 So. 3d 392, 395 (Fla. 2d DCA 2011)). Excising Detective Noad's observations made from the curtilage of the home, the affidavit cannot support a finding of probable cause because the only pertinent allegations remaining in the affidavit stem from the anonymous tip.

- 6 -

An anonymous tip that has not been proven reliable "add[s] nothing to the determination of probable cause." Smith v. State, 904 So. 2d 534, 537 (Fla. 1st DCA 2005).[2] This is because "[u]nlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.' " Florida v. J.L., 529 U.S. 266, 270 (2000) (citation omitted) (quoting Alabama v. White, 496 U.S. 325, 329 (1990)). The tip in this case was not shown to be reliable. While the State contends that the tip was verified, the mere fact that readily ascertainable details such as Daniels' location were verified "does not show that the tipster has knowledge of concealed criminal activity." J.L., 529 U.S. at 272.

Thus, the trial court erred in determining that Detective Noad's intrusion onto the curtilage was justified on the basis of officer safety and in denying the motion to suppress.

Reversed and remanded.

VILLANTI, C.J., and BADALAMENTI, J., Concur.

---

[2]An anonymous tip can justify a finding of reasonable suspicion if it, suitably corroborated, exhibits "sufficient indicia of reliability." Florida v. J.L., 529 U.S. 266, 270 (2000).