# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.



# Supreme Court of Kentucky

DATE 9-10-2020

## 2019-SC-000221-MR

DEWAYNE C. ZACHERY                                    APPELLANT

ON APPEAL FROM BELL CIRCUIT COURT
V.        HONORABLE PAUL KENTON WINCHESTER, SPECIAL JUDGE
NO. 17-CR-00450

COMMONWEALTH OF KENTUCKY                        APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING IN PART, VACATING IN PART, AND REMANDING

A Bell County Circuit Court jury found Dewayne C. Zachery guilty of second-degree burglary, theft by unlawful taking over $500, and being a Persistent Felony Offender (PFO) in the first-degree. The trial court sentenced Zachery to twenty-five years in prison in accordance with the jury's recommendation. Zachery raises several issues on appeal, including that the trial court erred (1) by declining to suppress evidence; (2) by declining to grant directed verdicts; and (3) by imposing an illegal sentence. After careful review, we affirm Zachery's convictions, vacate his sentence because it exceeds the statutory maximum and remand to the trial court for entry of a new judgment.

### FACTS AND PROCEDURAL HISTORY

Officer Johnson was patrolling in the morning hours on August 27, 2017, when he noticed a juvenile who was the subject of an active pickup order

walking with Zachery and another man. Zachery was walking away from a nearby McDonald's when the officer approached him. Before stopping to arrest the juvenile, Officer Johnson requested backup and Officers Smith and Meyers arrived shortly thereafter. Officer Johnson talked to the juvenile about why they were taking him into custody, and Officer Smith obtained Zachery's name and birthdate. He called dispatch and learned that Zachery had no outstanding warrants. Officer Smith asked Zachery if he had anything illegal on him, and he said, "No."

Officer Smith testified at a pretrial suppression hearing to explain what happened next. He stated that he asked for consent to search Zachery to make sure he did not have weapons or contraband. Officer Smith testified that Zachery raised his arms halfway and said, "Sure." Zachery also testified during the hearing and stated that he told Officer Smith "no" when he asked to search him.

During the hearing Officer Smith stated that he used his hands to feel the exterior of Zachery's pockets, then reached inside. In one of Zachery's pockets Officer Smith found two cell phones and a large amount of cash. He searched the other pocket and found four plastic bags containing pills. Two of the bags were marked "AM" and the other two were marked "PM." Officer Smith stopped searching and asked one of the other officers to determine the contents of the bags. The bags contained heart medication and did not contain illegal or controlled substances. Officer Smith then continued to search Zachery and found a lighter and a Kroger Visa card with Linda Yoakum's name

2

on it. Officer Smith read Zachery his *Miranda*[1] rights and began asking about the items he discovered. Zachery told the officers he earned the cash by mowing yards and that he found the Kroger Visa card but would not say where. The cash totaled $669. He also said that he got the pills from a guy a few days earlier.

According to Officer Smith, the location where Zachery was stopped was about two blocks from Yoakum's house. Officer Myers knew Yoakum and where she lived, so he drove the short distance to her house to ask about the Kroger Visa card. When he arrived, he noted that the garage door was open. Officer Myers knocked on the front door, but no one answered. He returned to the other officers and, since he was unable to find Yoakum, they let Zachery go.

Officer Myers contacted one of Yoakum's relatives who was able to get in contact with Yoakum at home. Officers Myers and Smith went back to Yoakum's house. Yoakum stated that she accidentally left her garage door open and the door leading from the garage to her kitchen unlocked when she went to bed the night before. She confirmed that the Kroger Visa card and heart medication belonged to her. She also stated she was missing between $750 and $800 in cash. The cash, medication and Kroger Visa card were in her purse, which was sitting on the kitchen table when she went to bed. Her

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

garage door leads into her kitchen, and her purse was located a short distance from the door.

The officers went back to find Zachery and asked him for the cash. He stated he gave the money to his sister. They searched his location but were unable to find the money. At trial, Yoakum testified that she did not know Zachery and never gave him permission to enter her house.

Zachery was charged with second-degree burglary, theft by unlawful taking over $500, and being a first-degree PFO. Zachery testified at trial and denied having entered Yoakum's home. He also stated that he bought the pills a couple days before the incident and found the Visa card behind the McDonald's he was walking from when Officer Johnson approached him. The jury found Zachery guilty on all charges, and the trial court sentenced him to twenty-five years in prison in accordance with the jury's recommendation.

## ANALYSIS

Zachery appeals as a matter of right arguing that the trial court erred (1) when it did not suppress evidence seized during the stop; (2) when it denied Zachery's motion for directed verdicts of acquittal on the second-degree burglary and theft charges; and (3) when it imposed a sentence contrary to Kentucky statutes.

### I. The trial court did not err by denying Zachery's motion to suppress.

Zachery filed a pretrial motion to suppress the evidence obtained during the warrantless search and the trial court conducted a hearing on March 28,

2018.[2] Officer Smith testified that upon arrival at the scene he observed two males standing close to Officer Johnson and a juvenile. He also stated that he asked Zachery whether he had anything illegal on him and Zachery said, "No." Officer Smith testified that he routinely asks for consent to search anyone he comes in contact with to make sure they do not have weapons or contraband on their person and stated that if he felt something, he would see what it was. He testified that he asked Zachery for consent to search him and Zachery responded by saying, "Sure" and raising his arms from where they were situated on his sides to about halfway up. Officer Smith testified that he believed this movement meant he was free to search Zachery.

Next, Officer Smith felt the exterior of Zachery's pockets. Officer Smith stated that he felt something, so he reached into Zachery's pockets. He found two cell phones and a large amount of cash from one pocket. He found four bags of pills and more cash in Zachery's other pocket. He placed Zachery in handcuffs to detain him until he could figure out what kind of pills were in the bags. While another officer determined that the pills were not a controlled substance, Officer Smith continued to search and found a lighter and a Kroger Visa card with Linda Yoakum's name on it. The officers read Zachery his

---

[2] Bell County Circuit Court Judge Robert Costanzo originally presided over Zachery's case and conducted the suppression hearing on March 28, 2018. On May 15, 2018, he was disqualified pursuant to KRS 26A.015(2)(e), which requires a judge to disqualify themselves if they have "knowledge of any other circumstances in which his impartiality might reasonably be questioned." Special Judge Paul K. Winchester was assigned to preside in the case on June 27, 2018. Zachery refiled the motion to suppress evidence and during a hearing on September 7, 2018, the parties agreed to submit the matter to Special Judge Winchester for a ruling after reviewing the video of the March 28 hearing.

*Miranda*[3] rights and questioned him about the items they found. Zachery claimed someone gave him the pills a few days before and that he found the Visa card on the ground.

Zachery also testified at the suppression hearing and denied consenting to the search. He stated he was coming out of McDonald's after getting breakfast and the juvenile was walking the same direction as he and the other man were headed. Officer Smith asked to search him, and he told him, "No." Zachery said he asked Officer Smith whether he had a warrant and Officer Smith said he did not. Zachery said he did not ask any other questions and kept quiet. He said Officer Smith searched him anyway. He testified that he would not have given the officer consent to search because he did not have a warrant.

On cross-examination Zachery again denied consenting to the search. When asked how he got the cash, he named two people he worked for recently who paid him $50-$70 each, then admitted those sums did not amount to the $669 he had in his pocket. He also stated that he bought the pills a few days prior.

After the testimony defense counsel argued that Zachery did not consent to the search and that Officer Smith did not have probable cause to believe a crime had been committed. Zachery's counsel advocated that because of the invalid search and lack of probable cause, all evidence should be suppressed.

---

[3] *Miranda*, 384 U.S. at 436.

The Commonwealth contended that Zachery voluntarily consented to the search.

In an order issued October 29, 2018, the trial court found that "Officer Smith gave credible testimony that the Defendant consented to the search. Further, the Defendant's actions of raising his arms outward to the side when asked if he could be searched could reasonably imply consent to search as well." The trial court determined that the Commonwealth met its burden to prove that consent was freely and voluntarily given and denied Zachery's motion to suppress. The trial court also reasoned that even if Zachery did not consent to the search, the search was reasonable under the circumstances and permitted by law as a matter of officer safety.

Zachery does not challenge the trial court's finding that he consented to the search, but argues, citing *Guzman v. Commonwealth*, 375 S.W.3d 805, 808 (Ky. 2012), that even if he did give consent, his consent limited Officer Smith to a traditional *Terry*[4] frisk and Officer Smith went beyond the scope of his consent when Officer Smith searched Zachery's pockets. Zachery also contends that the "plain feel" exception to a warrant was not met because Officer Smith did not feel inherently incriminating contraband during the pat-down.

The appellate standard of review of motions to suppress is two-fold:

[W]e first determine whether the trial court's findings of fact are supported by substantial evidence. If they are, then they are conclusive. Based on those findings of fact, we must then conduct

---

[4] *Terry v. Ohio*, 392 U.S. 1 (1968).

7

a *de novo* review of the trial court's application of the law to those facts to determine whether its decision is correct as a matter of law.

*Payton v. Commonwealth*, 327 S.W.3d 468, 471–72 (Ky. 2010) (quoting *Commonwealth v. Neal*, 84 S.W.3d 920, 923 (Ky. App. 2002)).[5] Substantial evidence is "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Commonwealth v. Jennings*, 490 S.W.3d 339, 346 (Ky. 2016) (quoting *Owens-Corning Fiberglas v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998)). Because Zachery does not challenge the trial court's findings of fact, and we do not otherwise conclude Officer Smith's testimony – that he asked for and obtained consent prior to searching Zachery – was not substantial evidence,[6] we turn to the trial court's application of the law to the facts.

"It is fundamental that all searches without a warrant are unreasonable unless it can be shown that they come within one of the exceptions to the rule that a search must be made pursuant to a valid warrant." *Cook v. Commonwealth*, 826 S.W.2d 329, 331 (Ky. 1992) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971)). Consent is one of the exceptions to

---

[5] At the time of the *Payton* decision, Kentucky Rule of Criminal Procedure (RCr) 9.78 was in effect and governed pretrial motions to suppress evidence and specifically addressed the appellate standard of review. RCr 9.78 was later superseded by RCr 8.27, which does not address the appellate standard of review. However, in *Simpson v. Commonwealth*, 474 S.W.3d 544 (Ky. 2015), the Court explained that despite the change in our criminal rules, the standard of review remains substantively unaffected.

[6] *See Payton*, 327 S.W.3d at 470-72 and *Hampton v. Commonwealth*, 231 S.W.3d 740, 749 (Ky. 2007) (when deciding a motion to suppress, the trial court as factfinder can believe one witness over another).

8

the warrant requirement. *Cook*, 826 S.W.2d at 331. "Plain feel" is another exception. *Commonwealth v. Jones*, 217 S.W.3d 190, 195 (Ky. 2006).

> In *Guzman*, 375 S.W.3d at 808, the Court explained that
>
> [e]ven when a search is authorized by consent, the scope of the search is limited by the terms of its authorization. The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective" reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?

(Citations omitted). Based on this premise, Zachery argues that his actions only indicated consent to being patted down for weapons and that it was unreasonable to infer that he gave Officer Smith permission to reach his hands into his pockets.

The Commonwealth cites *Hampton*, 231 S.W.3d at 743, to support its assertion that Zachery did not limit the scope of the search and Officer Smith did not impermissibly take items out of Zachery's pockets. In *Hampton*, police received an anonymous tip of possible drug activity in a house in Bowling Green. When officers approached the house to investigate the tip, they saw eight to ten people exit the house and get into their cars. *Id.* Hampton had just gotten into a car when an officer approached and saw Hampton put an unidentifiable object in his shoe. *Id.* The officer ordered Hampton out of the car and after a few minutes Hampton consented to a search of his person. *Id.* The officer discovered a pipe in Hampton's shoe and placed him under arrest. *Id.* A second pipe was discovered in Hampton's pocket at the police station. *Id.*

On appeal Hampton claimed the pipes should have been suppressed because they were discovered during an illegal search and seizure, arguing, among other things, that he thought the search would merely consist of a pat-down and would not reveal the pipe in his shoe. *Id.* at 748. The Court held that "[Hampton's] consent did not limit the scope of the search to that of a pat-down" and the search of Hampton's shoe was not improper. *Id.* at 749.

Here the trial court also determined that Zachery consented to a search of his person. During the pretrial suppression hearing, the following testimony was elicited:

> Officer Smith: I asked if he had anything illegal on him. He advised no. And, like I do with everyone I come in contact with, I asked for consent to search to make sure there's no weapons or any kind of contraband.
>
> Commonwealth: And did you ask him for consent to search his person?
>
> Officer Smith: Yes, I did.
>
> Commonwealth: And did he give that consent?
>
> Officer Smith: Yes, he said sure and then raised his arms up halfway where they weren't down to his sides anymore.
>
> Commonwealth: And did you take that, and the gesture as well, to go with the "yes you could search him?"
>
> Officer Smith: Yes.

Zachery takes issue with the Commonwealth's reliance on *Hampton*, arguing that the case is distinguishable because in *Hampton*, the police had reasonable, articulable suspicion of criminal activity, thereby justifying the

detention and search of the defendant. We disagree with Zachery's interpretation of *Hampton*.

Although the officer in *Hampton* had a reasonable suspicion of criminal activity to justify an investigatory stop of Hampton, that reasonable suspicion did not play a role in the Court's conclusion that Hampton's consent did not limit the scope of the search to a pat-down. As in *Hampton*, and with the *Guzman* decision as a guide, we consider what the typical reasonable person would have understood by the exchange between the officer and the suspect. When Officer Smith requested to search Zachery and Zachery provided both verbal and nonverbal responses of agreement without expressly qualifying the consent to search, it was objectively reasonable for Officer Smith to conclude that he had Zachery's permission to search his pockets as part of the general consent to search. *See Payton*, 327 S.W.3d at 473 (citing *United States v. Coffman*, 148 F.3d 952, 953 (8th Cir.1998)). Accordingly, we find that Zachery's consent did not limit the scope of the search to only a pat-down. Consequently, the trial court did not err by concluding Officer's Smith's conducted a legal search of Zachery, properly denied the motion to suppress, and the evidence from the search was properly admitted. Further, because we find that Zachery did not limit the scope of the search to a pat-down, his argument regarding the "plain feel" exception to the warrant requirement pursuant to *Minnesota v. Dickerson*, 508 U.S. 366 (1993), and *Jones*, 217 S.W.3d at 195, is moot.

11

## II.    The evidence was sufficient to warrant instructions on second-degree burglary and theft by unlawful taking.

At the close of the Commonwealth's case, defense counsel moved for a directed verdict of acquittal on the second-degree burglary and theft by unlawful taking over $500 charges. While acknowledging that Zachery was in possession of items stolen from Linda Yoakum's house, defense counsel stated there was no evidence that Zachery went inside the house or was the one who stole the items. The Commonwealth did not produce any eyewitnesses, video footage, or fingerprint testing to suggest Zachery was the one who went into Yoakum's kitchen and stole the items. The trial court denied the motion, finding that in viewing the evidence in a light most favorable to the Commonwealth, it was reasonable for a jury to find Zachery guilty of the offenses. The trial court highlighted Yoakum's testimony and the short period of time between when Yoakum went to bed and when Zachery was approached by police. Defense counsel renewed the motion at the conclusion of the defense's case and the trial court again denied the motion on the same grounds. Zachery now makes the same arguments on appeal.

A trial court's ruling on a motion for directed verdict is reviewed under the following parameters:

> When presented with a motion for a directed verdict, a court must consider the evidence as a whole, presume the Commonwealth's proof is true, draw all reasonable inferences in favor of the Commonwealth, and leave questions of weight and credibility to the jury. The trial court is authorized to grant a directed verdict if the Commonwealth has produced no more than a mere scintilla of evidence; if the evidence is more than a scintilla and it would be reasonable for the jury to return a verdict of guilty based on it, then the motion should be denied. On appellate

12

> review, the standard is slightly more deferential; the trial court
> should be reversed only if it would be clearly unreasonable for a
> jury to find guilt.

*Acosta v. Commonwealth*, 391 S.W.3d 809, 816 (Ky. 2013) (citations omitted).

We review a trial court's ruling on a motion for directed verdict for an abuse of

discretion, with abuse occurring when the court's decision is "arbitrary,

unreasonable, unfair, or unsupported by sound legal principles."

*Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Yoakum testified that on the evening of August 26, 2017, she went to the

grocery and returned home. She thought she closed the garage door after she

carried her groceries inside. The door from her garage into her house leads

into the kitchen, where she left her purse sitting on her kitchen table. She

explained that she kept small baggies of her medication in her purse because

she went out of town a few weeks prior and forgot her medication. By labeling

baggies "AM" and "PM" and keeping them in her purse, she knows that she

always has her medication on hand. She also had a Kroger Visa card and

approximately $750 to $800 cash in her wallet which she kept in her purse.

She testified that around 1:00 a.m. on August 27, 2017, she went to bed.

According to Yoakum her bedroom is located a considerable distance from the

kitchen. The next morning her son called and asked if she was okay. He

informed her that the police and her ex-husband were outside her house

because they found a man that had some of her belongings. She went to the

door and the first thing she noticed was that her garage door was up, which

13

was unusual. She confirmed that her medicine bags, Kroger Visa card and the cash from inside her purse were missing.

Zachery argues that proof of entry into Yoakum's home was required to fulfill the statutory requirements of burglary pursuant to KRS 511.030. However, in *Conyers v. Commonwealth*, 530 S.W.3d 413, 423 (Ky. 2017), the Court held that

> [t]he possession of stolen property is prima facie evidence of guilt of theft of the property. Where there is a breaking and entering and property taken from a dwelling and the property is found in possession of the accused, such showing makes a submissible case for the jury on a charge of burglary.

(Citations omitted).

The inference that Zachery burglarized Yoakum's residence based on his possession of the cash, Visa card and medication bags was sufficient evidence to justify submitting the burglary charge to the jury. This inference was strengthened by Yoakum's testimony that she left her garage door open during the early morning hours of August 27, 2017, it remained open all night and that her purse was sitting a few feet from the garage entrance into her house. Based on the inferences that could be drawn from the evidence presented by the Commonwealth, it would not have been unreasonable for a juror to find Zachery guilty of burglary. Therefore, the trial court did not err in denying the motion for directed verdict.

Additionally, Zachery argues that because the Commonwealth did not prove that Zachery entered Yoakum's home, he could not have been guilty of theft by unlawful taking. A person is guilty of theft by unlawful taking when he

14

"[t]akes or exercises control over moveable property of another with intent to deprive him thereof[.]" KRS 514.030(1)(a). Because the property was located inside her house, Zachery reasons that the only way he could have taken the property was if he unlawfully entered her house.

While Zachery is correct that there is no direct evidence that he was in Yoakum's house, unlawful entry is not required under the statute. Like the burglary charge, Zachery's possession of the items from Yoakum's purse is enough to create a reasonable inference that his actions satisfied the elements of the crime pursuant to KRS 514.030(1)(a). Because the trial court must draw "all fair and reasonable inferences from the evidence" in favor of the Commonwealth, it was not clearly unreasonable for the jury to have found guilt based on the evidence presented. The trial court was correct in denying the motion for directed verdict.

### III. The trial court erred when it ordered Zachery to serve a 25-year sentence.

Zachery argues that the trial court erred by imposing an illegal twenty-five-year sentence. Although this issue is unpreserved, "sentencing issues may be raised for the first time on appeal . . . ." *Cummings v. Commonwealth*, 226 S.W.3d 62, 66 (Ky. 2007). Zachery requests palpable error review pursuant to RCr 10.26. However, "the palpable error standard of review under RCr 10.26 is not applicable to appellate review of a true 'sentencing issue.'" *Jones v. Commonwealth*, 382 S.W.3d 22, 28 (Ky. 2011). "A sentence that lies outside the statutory limits is an illegal sentence, and the imposition of an illegal

sentence is inherently an abuse of discretion." *McClanahan v. Commonwealth,* 308 S.W.3d 694, 701 (Ky. 2010).

The jury recommended a ten-year sentence for the second-degree burglary offense, enhanced to twenty years because of Zachery's PFO status. The jury recommended a five-year sentence for theft by unlawful taking over $500 and recommended that the sentences run consecutively for a total sentence of twenty-five years. At the final sentencing, the trial court followed the jury's recommendation and sentenced Zachery to twenty-five years in prison without objection.

KRS 532.011(1)(c) provides:

(1) When multiple sentences of imprisonment are imposed on a defendant for more than one (1) crime, including a crime for which a previous sentence of probation or conditional discharge has been revoked, the multiple sentences shall run concurrently or consecutively as the court shall determine at the time of sentence, except that:

(c) The aggregate of consecutive indeterminate terms shall not exceed in maximum length the longest extended term which would be authorized by KRS 532.080 for the highest class of crime for which any of the sentences is imposed. In no event shall the aggregate of consecutive indeterminate terms exceed seventy (70) years[.]

Second-degree burglary is a Class C felony, and theft by unlawful taking over $500 is a Class D felony. KRS 532.080(6)(b) states

[i]f the offense for which he presently stands convicted is a Class C or Class D felony, a persistent felony offender in the first degree shall be sentenced to an indeterminate term of imprisonment, the maximum of which *shall not be less than ten (10) years nor more than twenty (20) years.*

16

(Emphasis added). Because second-degree burglary, a Class C felony, was the highest class of crime for which Zachery was convicted, the maximum sentence, even with the first-degree PFO enhancement, is twenty years. Therefore, pursuant to KRS 532.011(1)(c), the maximum aggregate sentence is also twenty years.

Because the sentence imposed was outside the statutory limits, the trial court abused its discretion in sentencing. The Commonwealth concedes that Zachery's sentence was unlawful. Therefore, the sentence must be vacated, and the case remanded to the trial court for further proceedings and entry of a new judgment.

## CONCLUSION

For the foregoing reasons, we affirm Zachery's convictions and vacate his illegal sentence as it did not comport with the statutory requirements. This matter is remanded to the Bell Circuit Court for entry of a new judgment consistent with this opinion.

All sitting. All concur.

17

COUNSEL FOR APPELLANT:

Steven Jared Buck
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Daniel Jay Cameron
Attorney General of Kentucky

Todd Dryden Ferguson
Assistant Attorney General