# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2024-1628
_____

RANDY MICHAEL WILLIAMS,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Santa Rosa County.
Clifton A. Drake, Judge.

August 6, 2025

ROWE, J.

Randy Michael Williams appeals his convictions and sentences for trafficking in cocaine, undesirable guest refuses to leave public lodging, and possession of drug paraphernalia. Williams pleaded nolo contendere to all three counts after the trial court denied his motion to suppress evidence obtained from his hotel room. Williams reserved the right to appeal the court's ruling on the motion to suppress. He argues that the search of his hotel room violated his Fourth Amendment rights because he was still in possession of his room because the hotel staff had not properly ejected him from the hotel. We disagree and affirm.

*Facts*

Williams was a guest at a Best Western hotel in Navarre, Florida. Around six o'clock on the morning of the incident, a hotel employee, Mary Huggins, arrived at the hotel to find Williams standing outside the hotel's main entrance. Williams looked disheveled: his clothes were dirty, and his demeanor was unusual. Huggins believed that Williams was intoxicated. Another employee told Huggins that Williams had been standing outside for a while. And Williams expressed concern that people were following him and trying to get into his room.

While Huggins was serving breakfast for the hotel's guests, Williams came inside and walked over to the front desk. Williams stood near the front desk for about an hour and stared at the guests as they ate breakfast. The attention made the guests and staff visibly uncomfortable. Willams finally left the lobby to stand outside. When Huggins approached Williams, he repeated his concerns about being followed and someone trying to break into his room. Williams made this same claim to another employee. Williams then asked Huggins to shut the door to his hotel room.

When she arrived at the room, Huggins saw that Williams had trashed his room. The furniture and decor were in disarray, and bottles of alcohol littered the floor. Huggins exited the room and instructed Williams to clean up his room or else he would be charged. Huggins also informed other hotel employees about the situation. Williams briefly returned to his room. For the next hour, Williams alternated between standing in the hotel lobby and standing outside the front entrance. At some point, Williams defecated on himself. Meanwhile, Huggins continued running the breakfast service. But the situation was becoming more and more uncomfortable, so she asked another employee to call 911.

Yvette Guimond, the housekeeping supervisor, called 911 at Huggins' request. During the call, Guimond stated: "We want them out. There's a lot of damage in [Williams' room]. And when I went to talk to him about it because he's smoking in the room—we just need him out. And he shut the door in my face when I asked him to leave."

Three deputies from the Santa Rosa Sheriff's Office responded to the call. The deputies were informed that hotel staff had asked Williams to leave because he had damaged a room and smoked in it. When the deputies arrived at the hotel, Williams appeared disoriented, "like he barely knew what was going on." Hotel staff asked the deputies to accompany them to Williams' room to survey the damage while Williams stood by.

A hotel staff member opened the door to Williams' room to allow the deputies to look inside. The room was in disarray and a bag of a white powdery substance, which looked like cocaine, was in plain view on the table nearest to the door. A hotel employee then asked the deputies to walk through the room with her, and the deputies obliged. The deputies saw several backpacks and cellphones in the room, a gun on the dresser, ammunition on the floor, and a container of apparent cocaine in an open backpack. The substance tested presumptive for cocaine. At that point, the deputies called a narcotics detective to the scene, who seized the contraband found the room.

The State charged Williams with trafficking in cocaine, undesirable guest refuses to leave public lodging, and possession of drug paraphernalia. Williams moved to suppress the evidence found in his hotel room, arguing that the deputies illegally searched his room because the hotel staff had no legal basis to eject him and never told him to leave. After an evidentiary hearing, the trial court denied the motion. Williams then entered a negotiated plea, reserving the right to appeal the dispositive ruling on the suppression motion. The trial court accepted Williams' plea and sentenced him to eight years in prison for trafficking in cocaine, sixty days in jail for refusing to leave public lodging, and 364 days in jail for possession of drug paraphernalia. This appeal follows.

*Analysis*

"In reviewing a trial court's ruling on a motion to suppress, we defer to the trial court's findings of fact if supported by competent, substantial evidence, but review de novo the application of the law to those facts." *Channell v. State*, 257 So. 3d 1228, 1232 (Fla. 1st DCA 2018).

The Fourth Amendment of the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" Amend. IV, U.S. Const. Article I, section 12 of the Florida Constitution protects the same right and provides that "[t]his right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court." According to the U.S. Supreme Court, "'[a]t the very core' of the Fourth Amendment 'stands the right of a man to retreat into his own home and there be free from unreasonable government intrusion.'" *Kyllo v. United States*, 533 U.S. 27, 31 (2001) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)). This means that "[w]ith few exceptions, the question whether a warrantless search of a home is reasonable and hence constitutional must be answered no." *Id.* (citing *Illinois v. Rodriguez*, 497 U.S. 177 (1990)).

The constitutional protections against unreasonable searches of the home have been extended to hotel rooms. Hotel rooms have been described as "homes to the peripatetic" and thus "legally imbued 'with the sanctity of private dwellings, ordinarily afforded the most stringent Fourth Amendment protection.'" *Green v. State*, 824 So. 2d 311, 314 (Fla. 1st DCA 2002) (quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 561 (1976)). But this protection is not absolute. *See id.* ("A hotel room or a motel room is the private dwelling of the occupant so long as he is legally there . . . and has not been requested by the management to leave for any valid or legal reason." (quoting *Sheff v. State*, 301 So. 2d 13, 16 (Fla. 1st DCA 1974))). A hotel guest has no longer has an expectation of privacy in his hotel room when he has been lawfully ejected from the hotel. Section 509.141, Florida Statutes, provides the permissible bases and procedure for the ejection of undesirable hotel guests:

> (1) The operator of any public lodging establishment . . . may remove or cause to be removed from such establishment, in the manner hereinafter provided, any guest of the establishment who, while on the premises of the establishment . . . is intoxicated . . . indulges in any language or conduct which disturbs the peace and

4

comfort of other guests or which injures the reputation, dignity, or standing of the establishment . . . or who, in the opinion of the operator, is a person the continued entertainment of whom would be detrimental to such establishment. The admission to, or the removal from, such establishment shall not be based upon race, creed, color, sex, physical disability, or national origin.

(2) The operator of any public lodging establishment . . . shall notify such guest that the establishment no longer desires to entertain the guest and shall request that such guest immediately depart from the establishment. Such notice may be given orally or in writing.

Williams argues that hotel staff failed to follow the requirements of the statute to lawfully eject him from his hotel room. He asserts that there was no competent, substantial evidence to show that the hotel had lawful grounds to ask him to leave or that the hotel asked that he immediately depart from the hotel. The evidence presented at the hearing shows otherwise.

The State presented competent, substantial evidence to show that the hotel staff had lawful grounds to ask Williams to depart from the hotel. For at least an hour, Williams alternated between standing outside the front entry doors of the hotel and standing in the lobby. During this time, he stared at other hotel guests as they ate breakfast, making both the guests and hotel staff noticeably uncomfortable. Williams was dirty, unkempt, and visibly disoriented. And at one point, he defecated on himself. When hotel staff approached him about his behavior on two separate occasions, he made strange remarks about people following him and trying to get into his room. Soon afterward, the staff discovered that Williams had trashed his room, so they told him to clean it. Williams briefly returned to his room, at which point the housekeeping supervisor went to check on him. She found Williams smoking in the room, which he had made no effort to clean. It was at this point that the housekeeping supervisor asked Williams to leave the hotel, and he responded by shutting his door in her face. Williams then returned to the lobby, where he continued behaving erratically for about another hour until the

hotel staff called 911. During the 911 call, the housekeeping supervisor stressed, "we just need him out."

Based on these facts, the trial court did not err in its conclusion that Williams' conduct "disturb[ed] the peace and comfort of other guests" and "injure[d] the reputation, dignity, or standing of the establishment." *See* § 509.141(1), Fla. Stat. The evidence supported the hotel staff's opinion that "continued entertainment of [Williams] would be detrimental to" the hotel. *See id.* And Williams' apparent intoxication also supported the decision to eject him from the hotel. *See id.* Thus, the trial court did not err in finding that the hotel had lawful grounds to eject Williams under subsection 509.141(1).

The State also presented competent, substantial evidence to show that the hotel provided the notice required under subsection 509.141(2), Florida Statutes, that Williams should depart from the hotel. Williams suggests that the evidence was lacking that he was asked to leave because the hotel staff member who asked him to leave did not testify. But the audio recording of her 911 call was played at the evidentiary hearing. In the recording, she stated, "he shut the door in my face *when I asked him to leave.*" This evidence was sufficient to support the trial court's finding that the hotel staff provided Williams with sufficient notice of their desire for him to leave and, thus, properly ejected Williams under the statute. *See* § 509.141(2), Fla. Stat. Because the hotel followed the statutory procedure for ejection, Williams' hotel room was no longer considered his private dwelling. And so the officers did not violate Williams' Fourth Amendment rights when they searched the room after being invited to do so by the hotel staff. *See Green*, 824 So. 2d at 314.

But even if the hotel had not followed the statutory procedures to legally eject Williams from his hotel room, the good faith exception to the exclusionary rule shields the evidence found in Williams' room from suppression. *See Davis v. United States*, 564 U.S. 229, 232 (2011). Under the good faith exception, improperly obtained evidence need not be excluded when officers acted in objectively reasonable reliance on binding appellate precedent. *Id.* This court has held that a hotel room loses Fourth Amendment protection when its occupant has been told to leave. *See Green*, 824

6

So. 2d at 314. Because the hotel staff told the officers that they had asked Willaims to leave, the officers had a good faith basis to search his room. And thus, the evidence they found did not need to be suppressed. *See Davis*, 564 U.S. at 232.

AFFIRMED.

LEWIS and BILBREY, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Jessica J. Yeary, Public Defender, and Flor Diaz-Wayt, Assistant Public Defender, Tallahassee, for Appellant.

James Uthmeier, Attorney General, and Michael Layton Schaub, Assistant Attorney General, Tallahassee, for Appellee.